IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

**TAYSHEEDRA D. ALLEN-NOLL,**

Plaintiff

v.

**MADISON AREA TECHNICAL COLLEGE,**
**JACK DANIELS, President,**
**TERRANCE Webb, Provost,**
**MARK C. LAUSCH, Dean of Center for Health and Safety Education.**
**BOARD OF MADISON AREA TECHNICAL COLLEGE,**
**CAROLYN STONER, CHAIR of the Board**

**COMPLAINT**

NOW COMES plaintiff, **Taysheedra D. Allen-Noll** (herein "Ms. Allen"), by her attorney,

Rocky L. Coe, Esq. of COE LAW OFFICES, who submits the following:

**I. NATURE OF THE CASE**

1        a.   This case is being brought pursuant to Title VII Civil Rights Act of 1964 (racial

discrimination), 42 USC §1981 (denial of contract because of race), 42 USC §1983

(discrimination by the State because of intentional deprivation of job property because of race),

the due process clauses and equal protection of the 5th and 14th Amendments of the

Constitution of the United States, and State claims of defamation pursuant to Wis. Stat. 942.01

(2) and breach of contract pursuant to Wis. Stat. 111.322 (3), whereby the plaintiff Ms. Allen

alleges that all because of being an outstanding instructor of the Black race, but the only African

American instructor in the Madison Area Technical College ("MATC") nursing field of about 64

instructors, she has been intentionally harassed, discriminated against, retaliated against and

falsely defamed in the non-renewal of her contract and in general the terms and conditions of employment because of the individual and collective conduct of MATC, Terrence Webb - Provost of MATC ("Provost Webb"), Mark Lausch -Dean of Center for Health and Safety Education (Dean Lausch), other employees of MATC and the Board of MATC.

b.      Further, the nature of this case involves Dean Lausch's (Caucasian) complicity in assisting nursing instructors (all Caucasian) who were hostile to Ms. Allen, by attending classes the instructors taught, during time students had paid to learn, to solicit and encourage Caucasian student complaints against Ms. Allen. To the contrary, it is incontrovertible fact that after an African American student spoke up and rallied white students to contradict and admit to Dean Lausch during one of his solicitation sessions that Ms. Allen was a good instructor, the next day the African American student, while in the presence of other students and at Ms. Allen's class, was physically removed from the college premises by security and local police.

c.      Also, it is averred that MATC Human Resources department and Dean Lausch after Ms. Allen filed an internal racial harassment/discrimination complaint, retaliated by perniciously scheming to terminate her by non-renewal of her contract and falsely defame Ms. Allen's reputation by indefinitely putting her on a Performance Improvement Plan (PIP) which was not meant to help improve, but was *ab initio* a vehicle to fire her. Then to support the PIP, they spread slanderous rumors that Ms. Allen was incompetent, was using her race to keep her job, but it was *fait accompli* that she would be fired, and recommended materially untrue information to the MATC Board to support their goal.

d.      And, because Ms. Allen was not on probation, a valid PIP was an indispensable element needed to give the Board termination power over Ms. Allen's contract. But, as averred,

the PIP was an impotent, retaliatory and discriminatory sham having no force and effect. Thus, Provost Webb and the Board, according to MATC rules and regulations, acted arbitrary, reckless, *ultra vires* and without *de jure* authority needed to non-renew Ms. Allen's contract.

## II. JURISDICTION AND VENUE

2.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331. The amount in controversy exceeds the sum of $350,000, exclusive of interest and costs. The Western District of Wisconsin is the federal venue for this action pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e, in that during all times relevant herein, the Defendants, MATC, the Board of MATC and its staff maintained business offices and engaged in a business affecting commerce and the Plaintiff Ms. Allen maintained her residence, all within the Western District of Wisconsin.

## III. TRIAL BY JURY IS DEMANDED

3.      Ms. Allen demands that her claim be tried by a jury of her peers.

## IV. PARTIES

4.      The Plaintiff, Ms. Allen is an adult female and at all times material and relevant was and is an individual residing at 936 Silver Ripple Way, City of Deforest, County of Dane, State of Wisconsin 53532.

5.      The primary Defendants MATC and the governing Board of MATC, is at all times material and relevant, agents of the State of Wisconsin and a Wisconsin corporation, doing business in and under the laws of Wisconsin, within the County of Dane, Wisconsin, with MATC and its Board being located at 1701 Wright Street, Madison, Wisconsin 53704.

6.      At all times material and relevant herein, collective Defendants MATC was a

State of Wisconsin employer engaged in an education industry affecting commerce, and had 50 or more employees for each working day in each of twenty or more calendar weeks.

V. THE RELEVANT AND OPERATIVE FACTS

**A.** **Background**

7.      Ms. Allen at all times material and relevant was an employee of MATC.

8.      MATC is a major agent of the State of Wisconsin and a State of Wisconsin employer located primarily in the Madison, Wisconsin area.

9.      Ms. Allen is an African American/Black woman, who was a doctoral candidate while employed at MATC, and now possesses a doctorate degree in education.

10.     MATC first employed Ms. Allen in January 2009 as a part-time nursing instructor in the Certified Nursing Assistant Program. She was then hired as an emergency hire in December of 2009. In 2010, Ms. Allen was promoted and advanced to permanent full-time faculty as an Instructor in Practical Nursing (P.N.). Ms. Allen was terminated on or about May 14, 2014 or the expiration of her contract when MATC failed and refused to renew her contract.

11.     Ms. Allen's starting salary was about $69,400 per year. But, during the tenure of Ms. Allen's employment with MATC she received several merit increases until her salary had risen to about $86,000 annually at the time MATC refused to renew her contract. Because of Ms. Allen's outstanding performance, she was able to work summer classes for MATC at the approximate rate of an additional $9,000 per year, bringing her annual salary to about $95,000.

12.     During Ms. Allen's entire tenure at MATC she received no discipline for behavior, performance or any other employment matters.

13.     At all times material and relevant herein, Ms. Allen's immediate supervisor was

an agent of MATC, Dean Lausch (Caucasian).

14.     During Ms. Allen's first full-time school year beginning July 2010-11 at MATC, she tolerated hostile rumors from the Caucasian PN staff who were conspiring to undermine her by using student sessions/class time to demean and denigrate her teaching abilities as being incompetent. Dean Lausch knew who the cabal of instructors were that were guilty of this slanderous undermining of Ms. Allen (see ¶ 29, *infra*) and he personally helped arrange and participated in anti-Ms. Allen sessions (see ¶¶ 17 and 61, infra).

15.     By on or about January of 2011, Ms. Allen and her alleged mentor Ms. Teri Gorder (Caucasian), who was also guilty of seeking to undermine Ms. Allen, both agreed that Ms. Allen needed a new mentor.

16.     The record *infra*, will show that eventually, Ms. Gorder revealed herself to be one of Ms. Allen's main harassers, in addition to Ms. Tracy Ahern and Ms. Di Polly.

**B.     The hostile environment against Black people at MATC**

17.     On or about Thursday, February 17, 2011, the Caucasian opposition to Ms. Allen worsened and became more acute when Instructor Di Polly (Caucasian) *and* Dean Lausch conducted in her class, on student paid time, the solicitation and encouragement of student complaints designed to "rally students to team up and plot to get Ms. Allen fired".

18.     However, when an African American student disagreed with the group of white students and rallied some of them to admit to Dean Lausch that Ms. Allen had been a good instructor, the staunch anti-Ms. Allen white students called the Black student, who defended Ms. Allen, a "crazy bitch and psychotic tramp".

19.     Acting as if a "tag team", one of the other anti-Ms. Allen Instructors, Ms. Ahern

(Caucasian), at her Thursday night class heard about the Black student's support for Ms. Allen from either the same white anti-Ms. Allen students, Ms. Polly or Dean Lausch. Following, this knowledge, Ms. Ahern waited until the next day, Friday, to punish, harass and make a spectacle of the Black student by causing a disruption of Ms. Allen's teaching by having security meet the Black student at Ms. Allen's Friday morning class while Ms. Allen was lecturing, and then in the presence of other students had campus security and local police physically remove the Black student from MATC college premises.

20.     The African American student who had rallied support for Ms. Allen, determined in an email to Ms. Polly that she had been discriminatorily targeted and removed because she was an African American and had exercised her most fundamental 1st Amendment Right of freedom of speech and spoke the truth about another African American, Ms. Allen, as she saw it, *but MATC wanted to silence her*. So, before she returned to the college premises, she sent the following email dated February 23, 2011 to warn Instructor Polly of racism and her rights:

> … "When requesting other students to email you the events that occurred Thursday, you did not request mine. ***Why? Is it my skin color?*** …I am very uncomfortable about what is going on and this violates many of my rights…"(***emphasis added)***

The Black student's version of events was never requested. Thus, the removal by MATC of the Black student who was giving her support to Ms. Allen after the white students gave their version, constitutes denial by MATC of due process and equal protection of the laws by suppressing free speech seeking to vindicate the reputation and honor of Ms. Allen.

21.     When Dean Lausch inquired of Ms. Allen, and not Ms. Ahern, as to why was

security involved in her class, she responded she had no idea, except it was the doing of Ms. Ahern, who caused the disruption in her class while she (Ms. Allen) was lecturing.

22.     After Dean Lausch learned that the African American student, who he heard evoke from other students that Ms. Allen was a good instructor and in response from anti-Ms. Allen white students, was called a "crazy bitch and psychotic tramp", was caused by Ms. Ahern to be removed from the college premises by campus security and local police, Ms. Ahern was not disciplined for her egregious and reprehensible conduct; thereby setting an example of what would happen to students, notably Black, who supported Ms. Allen through the exercise of their 1st Amendment right of free speech.

**C.     Ms. Allen's first MATC internal racial harassment/discrimination complaint**

23.     On May 10, 2011, Ms. Allen was removed from a clinical site called St. Mary's 3SW that she had taught at for over a year without a complaint. Ms. Allen allegedly was removed due to an extremely belated and suspicious first-time complaint coming three months after her last clinical day at the site by a Director Barb Hauge (Caucasian), who was a friend of Ms. Allen's former mentor and harasser, Ms. Teri Gorder (Caucasian). Ms. Gorder had wanted to work the site and with the removal of Ms. Allen, Ms. Gorder got the assignment.

24.     Records dated April 5, 2011, subsequently have shown that it was in fact Ms. Gorder who urged Ms. Hauge to file a complaint with Dean Lausch and to remove Ms. Allen.

25.     Ms. Allen was informed on May 10, 2011 of her removal and on May 11, 2011, she filed an internal complaint with MATC Human Resources ("HR") and established a *prima facie* case that she was being subjected to harassment/discrimination because of her African American skin color.

26.     Almost immediately, by memo dated May 12, 2011 to Dave Miller of HR, Dean Lausch began to retaliate and discredit Ms. Allen's racial harassment/discrimination complaint and openly identified, supported and embraced his harassing Caucasian group, consisting of at least "Tracy, Teri and Di", by in bad faith repeating and spreading the Caucasian group's slander of Ms. Allen by implying Ms. Allen was not believable, unethical, dishonest and gave fraudulent student grades when he emailed to HR:

> "I find it hard to believe that Teri would prompt Barb to say negative things so I would remove Taysheedra (Ms. Allen) from St. Mary's…both Teri and Barb could lose their jobs if they were found guilty (discipline).
> ***
> …all of her (Ms. Allen) students have passed. Tracy, Teri and Di Polly (all Caucasian instructors) are asking if she (Ms. Allen) doctored grades."

27.     Dean Lausch's conspiratorial support for the group of Caucasian nurses who ganged up to slander and falsely defame Ms. Allen, was obviated and magnified when his bad faith belief that Ms. Gorder and her supporters would never try to influence a job assignment such as a St. Mary's site was further belied by Ms. Gorder's email to Dean Lausch, when regarding a refresher course Ms. Gorder had previously taught, she falsely denigrated Ms. Allen as not being competent to take the assignment when she authored a May 24, 2011 email regarding her discussions with Ms. Polly and stated to Dean Lausch:

> "…one instructor…is responsible for communication with the regional site facility… a scheduled course which requires the open communication and coordination. *These are skills that have not been demonstrated by Taysheedra with either faculty or students. (emphasis added)*

28.     By memo dated June 1, 2011, Mr. Dave Miller from MATC Human Resources (HR) in response to Ms. Allen's internal harassment/discrimination complaint, in bad faith informed Ms. Allen that Dean Lausch had informed him that her removal from St. Mary's "was

not considered a disciplinary step in any way."; otherwise meaning the incident was condoned

as being inconsequential and of no negative effect. (This was in bad faith and a flagrant

falsehood, because as will be addressed *infra,* Dean Laush used the removal three years later in

2014 as part of a PIP framed to end MATC's contractual relationship with Ms. Allen.)

29. Ms. Allen, in paragraph 28, *supra*, wanted the communication of

harassing slander from other instructors to students and staff that she was an incompetent

instructor to stop, especially from the main instigators Ms. Tracey Ahern and Ms. Gorder

(Caucasian). By the same letter identified in Paragraph 28, *supra,* Mr. Miller in bad faith assured

Ms. Allen that "*Dean Lausch was aware that Tracy (Ms. Ahern) inappropriately discusses her*

*opinion of you (Ms. Allen) with students and advises students in an incorrect manner;*

*and…would ensure that it stops.*" (*emphasis added*) (Again, this is a bad faith and flagrant

falsehood because as noted *supra.* in the **NATURE OF THE CASE** at ¶1b, and documented *supra*

*at ¶¶ 19, 21-22 and infra at ¶ 61*, Dean Lausch not only did not stop Ms. Ahern from her

harassment/discrimination, he aided and abetted her in soliciting and inciting negative

complaints from students in order to slander Ms. Allen in preparation for termination.)

30. Dean Lausch never took any official or disciplinary action, pursuant to the

Employee Handbook -page 21, to ensure that he would make the Caucasian harassment of Ms.

Allen *and students* stop or otherwise warned anyone of discipline or ever disciplined Ms. Ahern

or any other Caucasian person that was unfairly undermining the job security of Ms. Allen. This

denial of fairness pursuant to MATC rules and regulations also constitutes denial of due process

and equal protection under the constitution of the U.S.

31. Mr. Miller of HR, and Dean Lausch never threatened or said what they would do

to stop the insubordinate, harassing slander and discrimination to Ms. Allen which Dean Lausch admitted should include disciplinary action to the known guilty group of Caucasian offenders of possibly losing their jobs (see ¶ 26, *supra*).

32.     On or about May 18, 2011 after Ms. Allen had filed her formal harassment and discrimination complaint, she had to respond to an extraneous and bad faith complaint from a tutor (Caucasian) who filed a complaint on behalf of students *after* the semester and exams were over. The tutor in contradiction of doing her job, had never contacted Ms. Allen to ascertain what she could do to help students learn and take exams during the semester.

33.     Again, Dean Lausch was not honest when in bad faith, he responded to Ms. Allen that "All is well. She (the tutor) was just happy that I heard her out. Thanks." (This is another falsehood by Dean Laush, because as shown *infra,* three years later, he presented the unfounded tutor complaint to the Board as a reason to not renew the contract of Ms. Allen.

**D.**     **Ms. Allen's "great teaching" at MATC, but Dean Lausch says problem is she's Black**

34.     At the beginning of the 2011 fall semester, in an email dated August 9, 2011 Dean Lausch acknowledged to a new mentor for Ms. Allen, that Ms. Allen's problem just might be that she was born Black, when he observed:

> "…Taysheedra Mathews (Ms. Allen) is a sweet and kind woman. I observed her last semester and she did a 'great job' with the class. Her issue is that the P.N. faculty simply do not like her. I cannot tell if it is race-related or simply personality conflicts. I think it is a combination of Tay being young, energetic, and *her race* that have alienated her from the faculty." ('*emphasis added'*)

35.     As late as December 20, 2011, despite the problems Ms. Allen had to deal with because of her race, Dean Lausch again personally acknowledged that she was doing an "outstanding job" when he wrote to her:

"Attached is my 'Faculty Professional Growth Review Administrative Assessment' form from my observation of your class last month. I thought you did an ***"outstanding job"***… I am honored to be surrounded by such professional faculty members as yourself." (***emphasis added***)

36.     Yet, an email from Mr. Miller in HR dated February 23, 2012 revealed that despite Dean Lausch's "outstanding job" observations of Ms. Allen, he was engaging in bad faith subterfuge to retaliate and plan a scheme to support his Caucasian staff by undermining the renewal of Ms. Allen's contract, without it looking like her termination was due to retaliation:

"…if we want to look at possible non-renewal, I need a listing of issues that have come up with her, when, what we did about them, etc. ***Most important would be issues that you have addressed with her prior to her bringing the harassment complaints to our attention. (emphasis added)***

**E.     MATC's failure/refusal to enforce its "Workplace Harassment/Discrimination policy"**

37.     MATC had a "**Workplace Harassment/Discrimination**" policy which requires MATC to …respond promptly and effectively to reports of harassment/discrimination and take appropriate action to prevent, correct, and, if necessary, discipline behavior that violate this policy which may range from reprimands up to dismissal…

38.     Thus, as of the February 23, 2012 email from HR (see ¶ 36, *supra*), in contravention of its policy, during a period of nine months MATC had failed and refused to abate and/or resolve the harassment/racial discrimination identified in Ms. Allen's May 2011 complaint. This denial constitutes denial of due process and equal protection under the law.

39.     The result of MATC's failure to resolve the complaints was that on or about November 29, 2012, a part-time Instructor Mr. Dennis Farber (Caucasian), during paid student time, was spreading rumors to students that "students that were being taught by Ms. Allen were being taught by an incompetent instructor and the reason she had not been fired was

because she had pulled the race card" (apparently, the race card was Ms. Allen's discrimination complaint) Ostensibly, the only way Mr. Farber could have known about the intent to fire Ms. Allen and her race complaint was by a leak planted among staff by Dean Lausch and/or HR).

40.     As will be noted, (*infra*, at ¶ 56) Dean Lausch admitted he knew from students that Mr. Farber was spreading these false and denigrating rumors to the effect that "the only reason the incompetent Ms. Allen still had a job was because she pulled the race card" (Ms. Allen's racial harassment/discrimination complaint)

41.     Yet, as of the February 23, 2012 email cited in Paragraph 36, MATC never took any negative action against Mr. Farber, Ms. Ahern or anyone else to stop the racial harassment.

**F.**     **MATC's retaliatory intent to drive Ms. Allen out of MATC using a PIP vehicle**

42.     Following Ms. Allen's harassment/racial discrimination complaint, by email dated February 28, 2012, *MATC did show its intent not to improve Ms. Allen*, but to drive Ms. Allen out of MATC by building a case for non-renewal of her contract as evidenced by a HR "warning" response to Dean Lausch that his then submission was inadequate to get Ms. Allen terminated:

> "…we really need to focus on this part of it and start building our case…My quick gut reaction says that those things would not be enough for us to consider non-renewal AT THIS TIME (sic), but as part of building on, would be something to work with."

43.     On or about May 17, 2012, as part of Dean Lausch's bad faith subterfuge and intent on behalf of MATC to build a retaliatory case to recommend and secure non-renewal of Ms. Allen's contract, Dean Lausch decided to put Ms. Allen in a Performance Improvement Plan (PIP) as a pretext vehicle to drive Ms. Allen out of MATC.

44.     Ms. Allen responded that the PIP Dean Lausch put her in was unwarranted in that not only had she been a good instructor, with her students successful at passing State

licensing exams, but she had gotten many thankful letters from students, among which was one that echoed the praiseful personal observations of Dean Lausch that she is a "great instructor" and thankful letters from schools she had taught and worked with.

45.     Further, in Ms. Allen's response to the PIP, she also noted that she had filed internal harassment/discrimination complaints that had not been addressed, and that the PIP contained and blamed her for matters (see ¶ 66, *infra*) that were supposed to have been condoned and resolved as non-issues (St. Mary's and the tutor, see *supra*, ¶¶ 28 and 32, respectively) and in some cases, such as her termination for a possible violation of "FERPA" (student privacy) and a student leaving the program, Dean Lausch unfairly tried to blame her, when  Caucasian Instructors were also involved.

46.     Indeed, the PIP vehicle contained a major malfunction, in that many alleged complaints -mostly hearsay- had been established as false or inconsequential by Ms. Allen, other students, and Dean Lausch's personal "great job" observations. Moreover, Ms. Allen accused the Caucasian staff and Dean Lausch of soliciting students to make complaints.

**G.     The "null and void', but  defamatory PIP in light of Ms. Allen's "great teaching"**

47.     More importantly, the PIP on its face was bogus, ineffective and inapplicable to Ms. Allen's performance because it was rendered null and void by an indispensable element required of the PIP which is the **OVERVIEW** section of "personal observations" by Dean Lausch.

48.     For instance, as per Paragraph 18, *supra, on February 17, 2011* in an anti-Ms. Allen session jointly conducted by Ms. Polly and Dean Lausch, when it backfired they witnessed Black and Caucasian students proclaim that Ms. Allen was a "good instructor", but the Black student was subsequently harassed by other Caucasian students and MATC; Dean Lausch had

admitted in a memo dated August 9, 2011 that Ms. Allen's race was a factor, and the Caucasian faculty did not like the "sweet and kind" African American-Ms. Allen, who he personally observed doing a "great job" in class. And, in Paragraph 35 *supra*, on December 20, 2011 he rated her doing an "outstanding job" in class.

49.     On October 5, 2012, again Dean Lausch, based on personal observation, praised Ms. Allen as doing a "good job" in class.

50.     Despite the preceding showering of Ms. Allen, in Paragraphs 48-49, with very positive personal appraisals by Dean Lausch, of Ms. Allen doing an "outstanding, great and good job in classes", because of his stronger desire to retaliate and appease both the traditional system of Caucasian staff and the inflamed white students, Dean Lausch promoted the false and defamatory PIPs which his personal observations had in fact contradicted and technically rendered inapplicable. The use of this dysfunctional PIP to falsely harass Ms. Allen as incompetent versus leaving the Caucasian staff to roam free to harass and discriminate without restraining discipline in contravention of MATC policies, constitutes denial of Ms. Allen's due process and equal protection under the constitution. It is also defamatory.

**H.      The bias of Dean Lausch in trying to defame Ms. Allen as part of his case to fire her.**

51.     On or about November 3, 2012, in the scheme of preparation for his next PIP for Ms. Allen, Dean Lausch, in bad faith, sought input from Delisa Scott of the Counseling Faculty, after she notified him about student concerns regarding the Pharmacology course taught by Ms. Allen; and that she responded to students that *"Ms. Allen had no control over most of their concerns, in that it is the most difficult theory class in nursing, 4 hrs. long, and held once a week on Fridays after a full week of classes, etc."(emphasis added)*

52.     Rather than address the historical problems students encountered in the difficult MATC Pharmacology program as proffered by Ms. Scott establishing that probably the system of the Pharmacology program itself needed changes, Dean Lausch in bad faith, steadfastly tried to interpret and use the hearsay complaints negatively against Ms. Allen, in attempting to further build his case of falsely defaming the reputation and career of Ms. Allen when by email he responded:

> "…I wonder if these are real issues for the students or if they were indirectly complaining about Taysheedra."

53.     Within minutes, by email Ms. Scott responded to Dean Lausch and remarked:

…They (the students) are fearful of talking to any of you…

***

*"Again, most of the comments I heard were nothing new, and were heard long before Taysheedra was on board…the stress of this class and one or two others, has been around as long as I have been here, nearly twenty-five years." (emphasis added)*

54.     Still, despite Supervisor Dean Lausch's very positive appraisals based on his personal observations, he continued in bad faith to promote the falsely inflamed and defamatory PIPs which technically he had contradicted and rendered incompetently worthless.

55.     By giving Ms. Allen a recap PIP dated December 17, 2012, Dean Lausch ensured that Ms. Allen was kept on a PIP, which was a necessary vehicle needed to drive Ms. Allen, as a non-probationary employee, out of MATC when he so recommended.

56.      By email dated January 11, 2013 Dean Laush continued his search for negativity that he could use to rid MATC of Ms. Allen when he heard from students and the MATC teachers Union, that part-time Instructor Dennis Farber (Caucasian), *who did not know Ms. Allen or ever observe her teach*, was spreading defamatory rumors to and inflaming students that "Ms. Allen is a horrible teacher and is about to be fired, should not be in teaching".

57.     Ostensibly, the only way that Mr. Farber could have known of Dean Lausch's and HR's bad faith subterfuge and scheming intent to defame and soon terminate Ms. Allen, was from intended leaks to staff of such information from Dean Lausch and Human Resources.

58.     Dean Lausch did not ask Mr. Farber how he discovered MATC's intent to fire Ms. Allen, as Dean Lausch and Mr. Miller of HR schemed in Paragraph 42, *supra*, or where he got his information from. Nor did Dean Lausch seek to discipline Mr. Farber as Dean Lausch stated such an undermining person deserved in Paragraph 26, *supra*, for spreading such defamatory information. Dean Lausch simply wanted to know why the student sent the email to the Union.

59.     But, Mr. Farber by email of the same date January 11, 2013, corroborated the information of Ms. Scott's answer in Paragraphs 51-52, *supra*, that the rumors were a very negative, unfounded, and unfair hearsay attack on Ms. Allen, when he apprised Dean Lausch:

> "…students consistently complain about their pharmacology course …The only thing I can reinforce with students is that their issues tend to be a trend…
>
> ***
>
> …I tend to not always be aware of the ***politics*** involved within the program…Things that I may hear, I guess I would consider to be ***rumors*** too. I am sorry if any of the discussions that have taken place in the clinical setting may have been construed by any student in a negative or attacking manner… (***emphasis added***)

**I.    Dean Lausch's scheme to keep Ms. Allen on the phony PIP despite improvement**

60.     Because, Ms. Allen would not be a probationary employee at the time Dean Lausch would seek to terminate her by non-renewal of her contract before the Board, he was advised in an email dated March 15, 2013 from MATC's Malika S. Evanco that *Ms. Allen would have to be on a PIP and showing no improvement to accomplish his goal.*

61.     So, to further his bad faith subterfuge, when there were no apparent problems with Ms. Allen in 2013, in order to further undermine and falsely defame Ms. Allen, by email

dated October 23, 2013 Dean Lausch conspired with Ms. Ahern to organize a meeting in order to "meet students to discuss and gather issues/concerns they were having with Ms. Allen".

62.    As noted in Paragraphs 19, 29 *supra*, this is the same Ms. Ahern that Dean Lausch had promised to stop from conducting this harassing/discriminatory type activity (see *supra* ¶ 29). And, this is the same Ms. Ahern that after Dean Lausch heard an African American student rally Caucasian students to admit to him that Ms. Allen was a "good instructor", Ms. Ahern, waited until the next day to disrupt Ms. Allen's class by using campus security and local police to remove the Black student from campus to chill their use of and warn students that their 1st Amendment right to free speech supporting the African American Ms. Allen would be silenced and not tolerated. (see *supra* ¶¶ 19-22). This conspiracy by Dean Lausch with Ms. Ahern on behalf of MATC violates the due process and equal protection of Ms. Allen.

63.    The MATC Employee Handbook has a provision for insubordination at page 21. By aiding and abetting the repeated conduct of Ms. Ahern, Dean Lausch and HR never promptly enforced the MATC policy on Harassment/Discrimination or ordered the conduct stopped, but by Dean Lausch's admission (see ¶ 26, *supra)*, if Ms. Ahern had been ordered to stop, her insubordination should have been disciplined. This refusal to enforce MATC policies to protect and be fair to Ms. Allen constitutes denial of constitutional due process and equal protection.

64.    Thus, Dean Lausch intentionally failed and refused to adhere to his promise to stop Ms. Ahern and other such denigrating and undermining conduct as cited *supra in* Parahraphs 19-22, 29, and 56-58. So, on behalf of MATC, in order to defame and terminate Ms. Allen, he aided and abetted the knowingly false and defamatory conduct and he is also complicit in violating the MATC harassment/discrimination policy (see *supra* ¶ 36).

65.     By Dean Lausch's written observation dated March 19, 2013, he confirmed Ms. Allen's continued outstanding teaching of Pharmacology students when he personally observed her while teaching and approved of Ms. Allen's performance as "***well done***!" (***emphasis added***)

**J.      Dean Lausch's continuous harassment/defamation of Ms. Allen with a bogus PIP**

66.     On December 16, 2013, Dean Lausch remained true to his bad faith mission stated in Paragraph 42, *supra*, on behalf of the Caucasian staff, to rid MATC of Ms. Allen when in preparation for presentation to the Board of his recommendation of non-renewal of her contract/termination, he kept her on a PIP bloated with repeated stale claims that had been condoned (i.e., St. Mary's, the tutor, FERPA), continuing rumors of negative hearsay, politics, false failures to follow MATC procedure, untruths and in general calculated harassment.

**K.      Ms. Allen's 2nd internal complaint, which noted MATC had not addressed her 1st**

67.     On or about November 20, 2013, Ms. Allen filed her second internal harassment/ discrimination complaint stating she was still receiving disparate treatment favoring Caucasian instructors and reminded MATC that as of two and a half years later, MATC (in violation of its promptness policy) still had not addressed or resolved her May, 11, 2011 complaint of Harassment/Discrimination (see *supra* ¶¶ 25-30).

**L.      Ms. Allen's filing of a discrimination/retaliation complaint with the State**

68.     On December 26, 2013, Ms. Allen filed a racial discrimination and retaliation complaint pursuant to the Wisconsin Fair Employment Law, alleging MATC had ignored her internal complaints and she had been discriminated and retaliated against since May 19, 2011. She also alleged retaliatory and disparate treatment based on her African American race.

**M.**     **Dean's Lausch ongoing retaliation against Ms. Allen and Provost Webb's approval**

69.     On or about December 26, 2014 the State of Wisconsin Agency mailed to MATC, by regular U.S. mail, notification of Ms. Allen's racial discrimination/retaliation complaint.

70.     Over two months after Ms. Allen filed her racial harassment/discrimination and retaliation complaint with the State of Wisconsin Agency, MATC further retaliated against Ms. Allen when since she was not on probation, as per MATC rules she had to be on a *bona fide* PIP to non-renew, Provost Webb acted ultra vires without proper authority when he approved Dean Lausch's recommendation for her nonrenewal.

71.     On March 15, 2014, Ms. Allen injured her knee and Dean Lausch demanded that Ms. Allen do clinical work that according to Ms. Allen and her doctor's notification, was work she could not do at the time.

72.     By March 19, 2014, Dean Lausch noted that he could not establish that certain negative items in the PIP continued to exist regarding Ms. Allen's performance, yet contrary to the written MATC improvement provision requiring her removal from the PIP, he kept them in his proposed recommendation to encourage the MATC Board to terminate Ms. Allen by non-renewal of her contract.

**N.**     **The dereliction and failure of the Board to do its duty**

73.     On May 14, 2014, Dean Lausch and Ms. Allen went before the Board, but she was not represented by anyone that articulated the averred critical facts of her case, those being; **a**) Dean Lausch's personal observations had negated the PIPs as bogus and discriminatory; **b**) Dean Lausch should have been disqualified as a presenter in that he and HR failed and refused to enforce MATC rules to protect Ms. Allen and her student supporters and

in fact, Dean Lausch had conspired and retaliated with harassing/discriminatory staff and students to harass, falsely defame her and attack students who supported her; **c**) the complicity of HR and Dean Lausch rendered the PIPs impotent, discriminatory, false and defamatory shams; **d**) the students she taught were learning and passing State licensing exams; **e**) and the Board as per MATC rules, under these circumstances of an incompetent and otherwise invalid PIP had no authority to non-renew the contract of a person not on probation.

74.     On May 14, 2014, the MATC Board (all Caucasian) listened to Dean Lausch present his PIP complaints, but Dean Lausch did not reveal to the Board facts that established that Ms. Allen, was not subject to a legitimate, bona fide and competent PIP that would give the Board the authority as per MATC rules and regulations to terminate a non-probationary employee by non-renewal of her contract (see ¶ 60, *supra*) in that, for several reasons the PIPS were invalid and counterfeit because, *inter alia*:

a) **first**, the PIP, based on Dean Lausch's and HR's intent to use the PIP as a vehicle to retaliate and drive Ms. Allen out of MATC (see ¶¶ F. 43-44) was a vehicle wrecked by inherently discriminatory and retaliatory intent to show bias for the Caucasian staff;

b) **second**, in contradiction of the PIPs, Dean Lausch knew from his repeated personal observations and student testimonials (see ¶ 18, *supra)* that Ms. Allen was doing an "outstanding to great job", ergo the PIPs were negated and rendered, false and bogus with defamatory hearsay; and, some of the alleged negative PIP conditions had been condoned, ceased to exist or had become stale since at least two years ago, and therefore Ms. Allen had improved, making the PIP inapplicable and she should have been removed from any PIP;

c) **third**, the PIPs were severely corrupted and ruined by racial hostility that *in fact* existed from, *inter alia*, false defamatory rumors ostensibly being spread by HR and Dean Lausch that Ms. Allen was "incompetent and the only reason she had a job was because she was using her Black race card (her internal harassment/discrimination complaint), but it was *fait accompli* that she was going to be fired" (see ¶¶ 39-42, and 56-57, *supra*) ; and a Black student that Dean Lausch witnessed rally students to admit that Ms. Allen was a good instructor, was attacked and punished by Ms. Ahern in an attempt to silence that student by having security and police remove the student from Ms. Allen's class and campus premises;

d) **forth**, as part of Dean Lausch's PIP scheme to terminate Ms. Allen, MATC HR and he perniciously failed and refused to enforce MATC policy to promptly investigate and stop racial harassment/discrimination and retaliation of Ms. Allen *and* students as first alleged three years ago in her May 2011 complaint;

e) **fifth**, in order to advance and falsely defame Ms. Allen as incompetent in the PIP, he seized upon students' complaints that were of the kind that had *existed 25 years before Ms. Allen was hired to teach one of the* toughest courses, and the systemic problems were beyond the control of Ms. Allen; and

f) **sixth**, most important, the PIP failed to note that students Ms. Allen had taught were learning/passing State nursing licensing exams.

75.     On May 14, 2014, the MATC Board, with insufficient knowledge about the harassment/discrimination, defamation and retaliation of the Ms. Allen situation, voted 6-2 to adopt and accept Dean Lausch's recommendation to non-renew Ms. Allen's contract even

though it admitted to critical deficiencies in its information because MATC's Human Resources department needed to "train supervisors (Dean Lausch) on how to supervise their employees and how to complete an effective evaluation'…"and matters should have been investigated" and … "review of Dean Lausch and Human Resources needs to occur" …

76.     On March 15, 2014 and on May 14, 2014, by engaging in the conduct described, *inter alia,* in Paragraphs 69, and 73-75 *supra*, MATC by Dean Lausch, the Provost and the MATC Board, on respective dates, discriminated against and falsely defamed Ms. Allen because of her African American/Black race by refusing to believe her when they:

**a**) without a bona fide PIP, acted *ultra vires* and abdicated their responsibility and duty to govern in that they had no authority to recklessly and arbitrarily adopt the incompetent, discriminatory and falsely defamatory non-renewal/termination of Ms. Allen's contract as recommended by Dean Lausch;

**b**) they knew or should have known that the supporting PIP was bogus, negated and rendered null and void by Dean Lausch's "repeated' personal observations of Ms. Allen's performance as "great to outstanding" and since the PIPs were filled with corrupt and false hearsay complaints, the PIPs were nothing but "bloated defamatory shams"; and

**c**) they knew or should have known that Dean Lausch and HR by their scheme to defame Ms. Allen as unethical, incompetent and corrupt (see ¶¶ 26, 39-41, *supra*) had facilitated racial harassment/discrimination of Ms. Allen *and* students and that was why for over a period of on or about three years MATC had egregiously and opprobriously failed and refused to comply with written MATC policy to promptly investigate and address Ms. Allen's two internal *prima facie* cases of racial harassment/retaliation.

77.     On July 16, 2014, Ms. Allen filed another charge with the Wisconsin Fair

Employment Law agency protesting MATC's termination of her contract as a result of racial

harassment/discrimination and retaliation.

78.     On or about October 3, 2014, Ms. Allen filed an additional race and disability

discrimination claim that she was also terminated because following notification by her doctor

that she could not do certain work due to her March 15, 2018 knee injury, Dean Lausch would

not allow her to use sick leave and listed in his recommendation of non-renewal that she would

not complete work as assigned.

79.     On January 5, 2018, Ms. Allen received her right to sue letters.

80.     Because of the conduct of the MATC defendants as alleged in **NATURE OF THE**

**CASE** and Paragraphs 1 through 79, plaintiff has suffered lost wages, lost opportunity,

humiliation, degradation to her reputation, severe damage to her career, anguish and pain

from the harassment, false defamation, discrimination and retaliation.

## VI.     PLAINTIFF'S FEDERAL CAUSES OF ACTION

81.     Plaintiff herein re-alleges and incorporates by reference allegations  set forth in

**NATURE OF THE CASE** and Paragraphs 1 through 80 in support of her claims that she was

discriminated against because of her race in violation of Title VII Civil Rights Act of 1964,42

U.S.C. ¶¶1981,1983, 2000e and denied due process and equal protection of the laws in

violation of the Fifth and Fourteenth Amendments of the United States Constitution and she

was treated differently in terms and conditions of employment as she sought to advance her

career in a part of the State of Wisconsin education system represented by its agent Madison

Area Technical College. More specifically, Ms. Allen was denied her right to enjoy an

employment contract all because of her African American/Black race. And, the State, by MATC because of Ms. Allen's African American/Black race, deprived her of job property rights in violation of the due process and equal protection clauses of the United States Constitution.

### VII.    PLAINTIFF'S STATE CAUSES OF ACTION

80.    Plaintiff, herein alleges and incorporated by reference allegations referenced in **NATURE OF THE CASE** and allegations 1 through 80, in support of Ms. Allen's claim that her reputation has been repeatedly maliciously defamed by defendants' false statements, policies and practices, Wis. Stat. 942.01 (2).

81.    Plaintiff herein alleges and incorporates by reference allegations referenced in **NATURE OF THE CASE** and allegations 1 through 80 in support of her claim that defendants because of her race as an African American/Black woman breached the employment contract, Wis. Sta. 111.322 (3), that it created with Plaintiff and continued to effectuate until May 14, 2014, at which time it conspired in bad faith to terminate Plaintiff from employment in the educational system in the State of Wisconsin.

82.    Plaintiff herein alleges and incorporates by allegations referenced in **NATURE OF THE CASE** and allegations 1-through 80 that she was wrongfully discharged without good cause and in retaliation for trying to develop and advance her career in the State of Wisconsin education system.

### VIII.    PRAYER FOR RELIEF

83.    Because of the acts and conduct of the named defendants were reckless, wanton, malicious and callous in utter disregard for Plaintiff's rights as protected under the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1981,

1983 and 2000e and Title VII of the Civil Rights Act, and State protection against defamation and breach of contract due to her race, Plaintiff hereby demands punitive damages.

84.     Plaintiff further requests the Court to grant the following:

a.     Unspecified compensatory and punitive damages;

b.     Reinstatement to her nursing instructor position;

c.     Cease and desist from discriminatorily placing Ms. Allen on a discriminatory and false PIP;

d.     Backpay, with missed pay raises and bonuses, with interest and loss of income from professional opportunity denial;

e.     Reasonable attorney fees and costs; and

f.     Such other relief as the Court may deem appropriate.

WHEREFORE, all of the alleged acts herein are subject to Title VII Civil Rights Acts of 1964, 42 U.S.C. §§ 1981, 1983 and 2000e and State claims. Plaintiff has a right to a jury trial.

82.     Plaintiff hereby demands a jury trial.

Dated this 26 day of March 2018

Respectfully submitted

s/Rocky L. Coe
Rocky L. Coe, Esq.
WI State Bar No. 1016642
Attorney for the Plaintiff
Taysheedra D. Allen Noll
f/k/a Taysheedra D. Allen