IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

**TAYSHEEDRA D. ALLEN-NOLL,**

      Plaintiff

   v.

**MADISON AREA TECHNICAL COLLEGE,**
**JACK DANIELS, President,**
**TERRANCE Webb, Provost,**
**MARK C. LAUSCH, Dean of Center for Health and Safety Education.**
**BOARD OF MADISON AREA TECHNICAL COLLEGE,**
**CAROLYN STONER, CHAIR of the Board**

### AMENDED COMPLAINT

NOW COMES plaintiff, **Taysheedra D. Allen-Noll** (herein "Ms. Allen"), by her attorney, Rocky L. Coe, Esq. of COE LAW OFFICES, who submits the following:

### I. NATURE OF THE CASE

1     a. This case is being brought pursuant to the Title VII Civil Rights Act of 1964 (racial discrimination because of skin color), 42 USC § 1981 (interference in and denial of contract because of race), 42 USC §1983 (discrimination by the State because of intentional deprivation of contractual job property rights because of race), due process clause and equal protection clauses, respectively, of the 5th and 14th Amendments of the Constitution of the United States, and State claims of defamation, breach of contract and wrongful discharge. Whereby the plaintiff Ms. Allen alleges that all because of her skin color and Black race and being an outstanding instructor, but a new and the only African American instructor in the Madison Area Technical College ("MATC") nursing field of about 64 instructors, she has been intentionally and

with hostility profiled as an incompetent/inferior African American. This heinous profile

included harassment, disparate treatment in the enforcement of MATC rules and regulations,

discrimination, retaliation and malicious false defamation in the non-renewal of her contract

and in general the terms and conditions of employment, all because of the individual and

collective conduct of MATC, Terrence Webb -the Provost of MATC ("Mr. Webb"), Mark Lausch -

Dean of Center for Health and Safety Education (Dean Lausch), employees of MATC and the

Board of MATC.

     b. Further, the nature of this case involves Dean Lausch's admitted complicity in

conspiring with and assisting nursing instructors (all Caucasian) who were hostile to Ms. Allen,

by attending classes the instructors taught, to unethically solicit and encourage student

complaints against Ms. Allen during time students had paid to learn. To the abject contrary,

after a Black student spoke up and rallied white students to contradict and admit to Dean

Lausch during one of his solicitation sessions that Ms. Allen was a good instructor, the next day

the African American student, while in the presence of other students and at Ms. Allen's class,

was physically removed from the class and college premises by security and local police.

     Critically important, is incontrovertible documented evidence that Dean Lausch agreed

with the Black student's assessment, in that he had repeatedly personally observed, evaluated

and documented Ms. Allen's performance of doing an outstanding job of teaching class.

     c.     Yet, Dean Lausch clandestinely supported the harassment and discrimination of

his department against its only African American, in that it is averred and admitted that after

Ms. Allen filed an internal MATC racial discrimination complaint to stop the discriminatory

harassment, MATC's Human Resources Department and Dean Lausch retaliated by perniciously

scheming to non-renew her contract by indefinitely putting her on a Performance Improvement Plan (PIP), that was really a bogus pretext to fire her, because it was never meant to help her improve, but was *ab initio,* always a vehicle fueled by false defamation and malice to admittedly drive her out of MATC and the State of Wisconsin Education system.

Indeed, to fuel and support the PIP vehicle designed to drive Ms. Allen out of the State of Wisconsin education system, MATC mysteriously began to increase unrestrained communications of false rumors among students and staff at MATC that Ms. Allen was an incompetent/inferior African American and was using her race to keep her job, but it was *fait accompli* that she would be fired.

In order to facilitate the termination of Ms. Allen, HR and Dean Lausch discriminated against Ms. Allen, by failing and refusing to enforce MATC written policy to promptly and properly investigate Ms. Allen's internal claims of racial discrimination. And, in continuation of the discrimination without any investigation, Dean Lausch advanced the bogus PIPS and other false slanderous information to the MATC Board. Significantly, since Ms. Allen was not on probation, the Board needed a valid PIP to have authority to accept Dean Laush's recommendation to non-renew her contract.

d.      Therefore, the PIPs -being abjectly contradicted as worthless by Dean Lausch's personal observations of Ms. Allen's "great performances of teaching in class"- were a retaliatory and discriminatory sham having no force and effect according to MATC rules and regulations.

And, since Ms. Allen, according to contractual rules and regulations of MATC, needed to be on a valid PIP to give the Board authority to fire her, the Board's conjunction of knowledge

that Dean Lausch did not fairly investigate Ms. Allen's internal Harassment/Racial Discrimination claims and that the PIPs were bogus because Dean Lausch had personally self-contradicted them with his outstanding appraisals, establishes the MATC Board grossly knew that it was being asked to engage in malevolent unlawful activity.

Therefore, the MATC Board and its officials knowingly acted with malice aforethought to breach contractual rules and regulations, in order to racially discriminate by using false defamation to interfere with and terminate its contractual relationship with its very competent, but only Black nursing instructor, Ms. Allen.

Without question, Provost Webb and the Board with heinous intent, recklessly *de facto* assimilated, grossly adopted and enabled the discriminatory conduct of HR and Dean Lausch when according to MATC rules and regulations, they acted *ultra-vires* and without the *de jure* authority needed to fire Ms. Allen. Thus, they abused their authority to fairly govern by arbitrarily, and in dereliction of duty, adopting and promoting racial discrimination, and violations of the U. S. 5th and 14th Constitution Amendments in and by a State agency.

## II. JURISDICTION AND VENUE

2.        This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331. The amount in controversy exceeds the sum of $350,000, exclusive of interest and costs. The Western District of Wisconsin is the federal venue for this action pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e, in that during all times relevant herein, the Defendants, MATC, the Board of MATC and its staff, maintained business offices and engaged in a business affecting commerce and the Plaintiff Ms. Allen maintained her residence, all within the Western District of Wisconsin.

### III. TRIAL BY JURY IS DEMANDED

3.      Ms. Allen demands that her claim be tried by a jury of her peers.

### IV. PARTIES

4.      The Plaintiff, Ms. Allen is an adult female and at all times material and

relevant was and is an individual residing at 936 Silver Ripple Way, City of Deforest, County of

Dane, State of Wisconsin 53532.

5.      The primary Defendants MATC and the governing Board of MATC, is at all

times material and relevant, agents of the State of Wisconsin and a Wisconsin corporation,

doing business in and under the laws of Wisconsin, within the County of Dane, Wisconsin, with

MATC and its Board being located at 1701 Wright Street, Madison, Wisconsin 53704.

6.      At all times material and relevant herein, collective Defendants MATC was a

State of Wisconsin employer engaged in an education industry affecting commerce, and had 50

or more employees for each working day in each of twenty or more calendar weeks.


### V. THE RELEVANT AND OPERATIVE FACTS

**A.      Background**

7.      Ms. Allen at all times material and relevant was an employee of MATC.

8.      MATC is a major agent of the State of Wisconsin and a State of Wisconsin

employer located primarily in the Madison, Wisconsin area.

9.      Ms. Allen is an African American/Black woman, who was a doctoral candidate

while employed at MATC, and now possesses a doctorate degree in education.

10.      MATC first employed Ms. Allen in January 2009 as a part-time nursing instructor

in the Certified Nursing Assistant Program. She was then hired as an emergency hire in December of 2009. In 2010, after Dean Mark Lausch (Caucasian) had observed and evaluated Ms. Allen's outstanding teaching skills, he was compelled to promote and advance her to permanent full-time faculty as an Instructor in Practical Nursing (P.N.). Ms. Allen was terminated on or about May 14, 2014 or the expiration of her contract when MATC for discriminatory and retaliatory reasons, failed and refused to renew her contract.

11.     Ms. Allen's starting salary was about $69,400 per year. But, during the tenure of Ms. Allen's employment with MATC, her merit increases continued until her salary had risen to about $86,000 annually at the time of ending her contractual relationship. Because of Ms. Allen's outstanding performance, she was qualified to work summer classes for MATC at the approximate rate of an additional $9,000 per year, bringing her annual salary to about $95,000.

12.     During Ms. Allen's entire tenure at MATC she received no discipline for behavior, performance or any other employment matters.

13.     At all times material and relevant herein, Ms. Allen's immediate supervisor was an agent of MATC, Dean Lausch.

14.     During Ms. Allen's first school year beginning July 2010-11 at MATC she tolerated hostile rumors from the Caucasian PN staff who were conspiring to undermine her by unethically using student class time to demean, denigrate and profile her teaching abilities as being incompetent/inferior, so that students would be inflamed that they were not being adequately taught to pass licensing exams by her. Not only did Dean Lausch know who the cabal of instructors were that were guilty of this slanderous undermining of Ms. Allen (see ¶ 29, *infra*), he conspired to arrange and participated in anti-Ms. Allen sessions (see ¶ 17, *infra*).

15.     By on or about January of 2011, Ms. Allen and her alleged mentor Ms. Teri Gorder (Caucasian), who was a guilty conspirator seeking to racially undermine Ms. Allen, both agreed that Ms. Allen needed a new mentor.

16.     The record *infra*, will show that eventually, Ms. Gorder revealed herself to be one of Ms. Allen's main harassers, in a cabal that included Ms. Tracy Ahern and Ms. Di Polly.

**B.     The hostile environment against Black people at MATC**

17.     On or about Thursday, February 17, 2011, the Caucasian opposition to Ms. Allen worsened and became more acute when instructor Di Polly (Caucasian) *and* Dean Lausch conducted in her class, unethically on student paid learning time, the solicitation, encouragement and inflammation of student complaints designed to "rally students to team up and plot to get Ms. Allen fired".

18.     However, when an African American student disagreed with the group of white students and rallied some of them to admit to Dean Lausch that Ms. Allen had been a good instructor, the inflamed anti-Ms. Allen white students called the Black student, who defended Ms. Allen, a "crazy bitch and psychotic tramp".

19.     Acting as if a "tag team", another anti-Ms. Allen Instructor, Ms. Ahern (Caucasian), heard that same Thursday about the Black student's support for Ms. Allen from either the same white anti-Ms. Allen students, Ms. Polly or Dean Lausch. The following day, Friday, Ms. Ahern seized upon her knowledge to punish, harass and make a spectacle of the pro Ms. Allen Black student by causing a disruption at Ms. Allen's class by having security meet the Black student at Ms. Allen's Friday morning class while Ms. Allen was lecturing, and then in the

presence of other students, had campus security and local police physically remove the Black

student from MATC college premises.

20.     The African American student who had rallied support for Ms. Allen, determined

in an email to Ms. Polly that she had been discriminatorily targeted and removed because she

was an African American and had exercised her most fundamental 1st Amendment Right of

freedom of speech and spoke her truth about another African American, Ms. Allen, but MATC

wanted to silence her.

So, before the student returned to the college premises, she sent the following email

dated February 23, 2011 to Ms. Polly:

> … ”When requesting other students to email you the events that occurred
> Thursday, you did not request mine. ***Why? Is it my skin color?*** …I am very
> uncomfortable about what is going on and this violates many of my rights…”
> (***emphasis added***)

There is no evidence that the Black student's version of events was ever requested.

Thus, the removal by MATC of the Black student who was giving her support to Ms. Allen after

the inflamed white students gave their version, promotes unconstitutional segregated privilege

and denial by MATC of due process and equal protection of the laws to African Americans by

suppressing free speech seeking to vindicate the reputation and honor of Ms. Allen.


21.     When a concerned Dean Lausch inquired of Ms. Allen, and not Ms. Ahern, as to

why was security involved in her class, she responded she had no idea, except it was the doing

of Ms. Ahern, who caused the disruption in her class while she (Ms. Allen) was lecturing.

22.     There is no evidence that Ms. Ahern was disciplined after Dean Lausch heard

that Ms. Ahern had caused the African American student who vocalized support for M. Allen to be removed from the college premises by campus security and local police, thereby setting an example of what would happen to students, especially Black, who supported Ms. Allen through the exercise of their 1st Amendment right of free speech.

**C.**     **A peaking of the racial harassment/discrimination to Ms. Allen**

23.     On May 10, 2011, the anti-Ms. Allen hostility began to peak when teaching assignments were being made for the fall semester and it caused Ms. Allen to lose work opportunity when she was removed from a clinical site called St. Mary's 3SW that she had taught at for over a year without a complaint. Ms. Allen was removed due to an extremely belated and suspicious performance complaint from St. Mary's Director Barbara Hauge (Caucasian), also a friend of Ms. Gorder. The complaint was suspicious because it came three months after Ms. Allen's last clinical day at the site. Notably, Ms. Gorder had wanted the opportunity to work the site and with the removal of Ms. Allen, Ms. Gorder got the assignment.

24.     Dean Lausch immediately defended Ms. Gorder and Ms. Hauge as being innocent of any negative skullduggery in causing Ms. Allen's demeaning involuntary removal because they knew if true, this type negativity could get them disciplined and even fired. However, Dean Lausch was later established as a rank prevaricator and liar by an email dated as early as April 5, 2011 to him from Ms. Gorder, evidencing him as complicit in the Ms. Allen removal from St. Mary's because the email to him falsely slandered Ms. Allen and urged Ms. Hauge to file a complaint with him to remove Ms. Allen.

**D.**  **Ms. Allen's first MATC internal racial harassment/discrimination complaint**

25.     More specifically, after Ms. Allen was informed on May 10, 2011 of her removal

from St. Mary's, on May 11, 2011, she filed an internal complaint with MATC Human Resources

("HR") and established a *prima facie* case that she was being subjected to loss of job

opportunity, slanderous denigration and racial discrimination by MATC staff profiling her as an

incompetent/inferior African American.

26.     Almost immediately, by memo dated May 12, 2011 to Dave Miller of HR, Dean

Lausch -while acknowledging the grave seriousness of denying a job opportunity to Ms. Allen-

began to retaliate and sabotage Ms. Allen's racial discrimination complaint and openly

conspired with, lied on behalf of, identified, supported and embraced his harassing Caucasian

cabal of at least "Tracy, Teri and Di" by in bad faith demeaning Ms. Allen and repeating their

false slander of Ms. Allen to support the cabal by implying Ms. Allen was unethical and gave

fraudulent student grades when he stated to HR:

> "I find it hard to believe that Teri would prompt Barb to say negative things so I
> would remove Taysheedra (Ms. Allen) from St. Mary's…both Teri and Barb could
> lose their jobs if they were found guilty (discipline).
> ***
> …all of her (Ms. Allen) students have passed. Tracy, Teri and Di Polly (all
> Caucasian instructors) are asking if she (Ms. Allen) doctored grades."

27.     Notwithstanding a group of Caucasian nurses ganged up to slander and falsely

defame Ms. Allen, apparently with Dean Lausch's approval and prevarication on their behalf,

his knowledge of their concerted attack of undermining Ms. Allen was further obviated, when

regarding a refresher course Ms. Gorder had previously taught, she falsely denigrated Ms. Allen

as not being competent to take the assignment and having inferior communication skills when

10

she authored an email regarding her discussions with fellow harasser Ms. Polly and stated in a May 24, 2011 email to Dean Lausch:

> "…one instructor…is responsible for communication with the regional site facility… a scheduled course which requires the open communication and coordination. *These are skills that have not been demonstrated by Taysheedra with either faculty or students. (emphasis added)*

28. By memo dated June 1, 2011, Mr. Dave Miller from MATC Human Resources in response to Ms. Allen's internal harassment/discrimination complaint, informed Ms. Allen that Dean Lausch had informed him that her removal from St. Mary's "was not considered a disciplinary step in any way." (This was in bad faith and a flagrant prevarication, because as will be addressed *infra,* Dean Laush used the removal three years later in 2014 as part of a bogus PIP created with the intent to interfere with and end Ms. Allen's MATC contract.)

29. Ms. Allen, in the internal complaint cited *supra* in ¶ 28, wanted the communication of harassing false slander from other instructors to students that she was an incompetent/inferior instructor, to stop, especially from the main instigators Ms. Tracey Ahern and Ms. Gorder (Caucasian). By the same letter identified in ¶ 28, *supra,* Mr. Miller in bad faith assured Ms. Allen that "*Dean Lausch was aware that Tracy (Ms. Ahern) inappropriately discusses her opinion of you (Ms. Allen) with students and advises students in an incorrect manner; and…would ensure that it stops.*" (*emphasis added*) (Again, this is a bad faith and flagrant lie, because as noted *supra.* in the **NATURE OF THE CASE** at ¶1b, and documented *supra at ¶¶ 19, 21-22 and infra at ¶ 61*, Dean Lausch not only did not stop Ms. Ahern from her harassment/discrimination, he aided and abetted her in soliciting and inflaming negative complaints from students in order to maliciously and falsely slander Ms. Allen in preparation for termination by interference with and non-renewal of her contract.)

30.     Dean Lausch never fulfilled the remedial promise from HR and never did his job by taking any official action, as mandated by the Employee Handbook –page 21- to ensure that he would make the Caucasian harassment of Ms. Allen stop or otherwise warn or ever discipline Ms. Ahern or any other Caucasian person he knew who was undermining the job security of Ms. Allen. This denial of fairness to Ms. Allen pursuant to MATC rules and regulations also constitutes denial of due process and equal protection under the U.S. constitution.

31.     Other than Mr. Miller of HR, giving Ms. Allen falsehoods to try and mollify her, there is no evidence that he or Dean Lausch ever warned staff or said what they would do to stop the aspersions, harassment, false slander and discrimination, which Dean Lausch admitted should include disciplinary action to the known offenders of possibly losing their jobs (see ¶ 29, *supra*).

32.     On or about May 18, 2011 after Ms. Allen had filed her formal internal Harassment/Discrimination claim, the trumped-up complaints from the institution continued to appear -in the Ms. Gorder's St. Mary's fashion of belatedly and falsely castigating Ms. Allen's teaching abilities- when she suddenly had to respond to an untimely and strange complaint from a tutor (Caucasian) who filed a complaint on behalf of students after the semester and exams were over. The tutor in contradiction of doing her job during the semester when it would have timely helped students, prior to Ms. Allen's racial discrimination complaint, had never complained of Ms. Allen, much less contacted Ms. Allen to assist students.

33.     Again, Dean Lausch was not honest when, he responded to Ms. Allen

that "All is well. She (the tutor) was just happy that I heard her out. Thanks." (This is another lie

by Dean Laush, because as shown *infra,* three years later, he presented the ludicrous tutor

complaint to the Board as part of his slander to non-renew the contract of Ms. Allen.

**E.**   **MATC note of Ms. Allen's "great job performance", but problem of being of Black race**

34.   As stated *ver batim* below, at the beginning of the 2011 fall semester, in an email

dated August 9, 2011 Dean Lausch "acknowledged to a new mentor for Ms. Allen, that from his

personal observations, Ms. Allen was doing a great job in class", so Ms. Allen's problem was not

her competency at teaching, but it just might be that she was born Black, "because her race

made her an alien to the white staff, and they did not like her":

> "…Taysheedra Mathews (Ms. Allen) is a sweet and kind woman. I observed her
> last semester and she did a 'great job' with the class. Her issue is that the P.N.
> faculty simply do not like her. I cannot tell if it is race-related or simply
> personality conflicts. I think it is a combination of Tay being young, energetic,
> and ***her race*** that have alienated her from the faculty." (***emphasis added***)

35.   And, as late as December 20, 2011, despite all of the MATC problems Ms. Allen

had to deal with because of her race, Dean Lausch again was personally compelled to

acknowledge that she was doing an "outstanding job" when he wrote to her:

> "Attached is my 'Faculty Professional Growth Review Administrative Assessment' form
> from my observation of your class last month. I thought you did an ***"outstanding job"***…I am
> honored to be surrounded by such professional faculty members as yourself." (***emphasis
> added)***

36.   However, an email from Mr. Miller in HR dated February 23, 2012 revealed that

despite the revelations of Dean Lausch's "outstanding job" observation, he was engaging in

skullduggery and subterfuge to retaliate against Ms. Allen and her Harassment/Discrimination

claim of racism in his department by not investigating her disruptive claims, but addressing it by

planning a scheme to simultaneously ambush Ms. Allen and support his Caucasian staff by

undermining the renewal of Ms. Allen's contract and ridding MATC of her quest for equal

opportunity without it looking like MATC was racist and/or retaliating against her due to her

lingering and still unaddressed racial discrimination complaint against MATC:

> "…if we want to look at possible non-renewal, I need a listing of issues that have come up with her, when, what we did about them, etc. ***Most important would be issues that you have addressed with her prior to her bringing the harassment complaints to our attention. (emphasis added)***

**F.**   **MATC's failure/refusal to enforce its "Workplace Harassment/Discrimination Policy"**

37.   Mr. Miller of HR in his memo to Ms. Allen cited *supra* in ¶ 28, identified a critical

fact to Ms. Allen, which was MATC had a "**Workplace Harassment/Discrimination**" policy which

requires MATC to …respond promptly and effectively to reports of discrimination and

harassment and take appropriate action to prevent, correct, and, if necessary, discipline

behavior that violate this policy which may range from reprimands up to dismissal, depending

upon the severity of the offense.

38.   Thus, as of the February 23, 2012 email from HR (see ¶ 36, supra), in

contravention of its policy, during a period of nine months MATC had perniciously failed and

refused to protect Ms. Allen from, abate and/or resolve the harassment/racial discrimination,

which included profiling of Ms. Allen as an incompetent/inferior African American, as identified

in Ms. Allen's May 2011 formal internal complaint. This denial violates due process and equal

protection of the law.

39.   The effect of MATC's malicious inaction to abate and/or resolve the race

discrimination complaints was that it allowed a mimicking growth/propagation of Ms. Ahern's

harassing conduct, when on or about November 29, 2012 an instructor Mr. Dennis Farber

(Caucasian), felt privileged during paid student time, to mimic the conduct of Ms. Ahern cited *supra* in ¶ 29, of inappropriately giving her negative impression of Ms. Allen to students.

In this regard, Mr. Farber unethically exacerbated the negative Caucasian profiling of Ms. Allen as an incompetent/inferior Black person, by spreading false rumors to inflame third party students that: "students that were being taught by Ms. Allen were being taught by an incompetent instructor and the reason she had not been fired was because she had pulled the race card" (The race card was apparently Ms. Allen's harassment/discrimination complaint).

40.     As will be noted, (*infra*, at ¶ 56) Dean Lausch admitted he knew from students that Mr. Farber was spreading these false and denigrating rumors to the effect that "the only reason the incompetent Ms. Allen had a job was because she is of the African American race."

41.     Yet, as of the February 23, 2012 email cited in ¶ 36, still there is no evidence that MATC ever took any negative and/or disciplinary action against Mr. Farber, Ms. Ahern or anyone else to stop and protect Ms. Allen from the denigrating, malicious and reprehensible racial harassment.

**G.     The intent to solve MATC's racial issue and the Harassment/Discrimination complaint against Dean Laush's department by terminating the only African American in the department, Ms. Allen**

42.     To the contrary, a Mr. Miller email dated February 28, 2012 to Dean Lausch following Ms. Allen's harassment/racial discrimination complaint, revealed that MATC intended to "kill two birds with one stone", meaning it could get rid of the race issue and the creator of the internal discrimination complaint simply by firing the only African American, Ms. Allen. This schemed ambush of Ms. Allen would be accomplished by building a case for non-renewal of her

contract. They would thereby rid MATC of Ms. Allen as shown by Mr. Miller's of HR *ver batim* directions to and coaching of Dean Lausch on his then current inadequate evidence for her termination and how to build a future case to accomplish their decision to fire her:

> "…we really need to focus on this part of it and start building our case…My quick gut reaction says that those things would not be enough for us to consider non-renewal AT THIS TIME (sic), but as part of building on, would be something to work with."

Significantly, as admitted by Mr. Miller of HR, MATC had no valid reason or good cause to non-renew Ms. Allen's contract. Ergo, the racial, retaliatory and malevolent intent to fire her is a nefarious and unlawful goal of MATC to interfere with and breach the contract of Ms. Allen simply because of the color of her skin.

Moreover, this decision to get rid of Ms. Allen based on the above heinous scheming and skullduggery of HR and Dean Lausch, obviated that it was a *fait accompli*, that regardless of her perpetual outstanding performances they would find a way to fire her.

**H.**    **The plan to denigrate and drive Ms. Allen out of MATC using a PIP vehicle**.

43.    On or about May 17, 2012, as part of Dean Lausch's surreptitious subterfuge and malevolent intent on behalf of MATC to build a retaliatory case to recommend and secure non-renewal of Ms. Allen's contract, Dean Lausch decided to put Ms. Allen in a vehicle called a "Performance Improvement Plan" (PIP). But, the PIP was not to improve, but from its inception, *ab initio* was a pretext vehicle to drive her out of MATC, which vehicle would be fueled by both the false rumors from staff that Ms. Allen was an incompetent/inferior Black person, and from inflamed students who were being told Ms. Allen was giving an inferior education that would not enable them to pass State licensing exams.

44.     Ms. Allen responded that the PIP Dean Lausch put her in was unwarranted in that not only had she been a good instructor with her students successful at passing State licensing exams, but she had gotten many thankful letters from students, among which was one that echoed the praiseful personal observations of Dean Lausch that she is a "great instructor" and thankful letters from schools she had taught and worked with.

45.     Further, in Ms. Allen's response to the PIP, she also noted that she had filed internal harassment/discrimination complaints that had not been addressed, and that the PIP contained and blamed her for matters (see ¶ 66, *infra*) that were supposed to have been condoned and/or resolved as non-issues (i.e., St. Mary's and the tutor, see *supra*, ¶¶ 28 and 32, respectively) and in some cases, such as her possible violation of "FERPA" (student privacy) and a student leaving the program, Dean Lausch without evidence, favored the Caucasian instructors.

46.     More importantly, the PIP vehicle contained a major defect and should have been recalled in that many alleged complaints -mostly hearsay- had been negated or rendered false by other students, Dean Lausch's personal "great job" observations, and Ms. Allen.

**I.      The "null and void', but  defamatory PIP in light of Ms. Allen's "great teaching"**

47.     Ostensibly, the PIP on its face was bogus and a disastrous diametric illusion when held up to Ms. Allen's great performances because it was rendered null and void by an indispensable element required of the PIP which is the **OVERVIEW** section of "personal observations" by Dean Lausch.

48.     Critically, for instance: 1) in Paragraph 18, *supra*, as early as February 17, 2011 in an anti-Ms. Allen session conducted in the class of Di Polly and attended by Dean Lausch, he

heard some students state that Ms. Allen was a good teacher; 2) Dean Lausch had admitted in a memo dated August 9, 2011 that Ms. Allen's competency was not a factor because he had personally observed her doing a great job in class, but race was a factor because the Caucasian faculty did not like and was alienated from the "sweet and kind" African American-Ms. Allen; 3) and, in Paragraph 35 *supra*, as recent as December 20, 2011 he observed her still doing an "outstanding job" in class.

49.     On October 5, 2012, again Dean Lausch, based on personal observation, praised Ms. Allen as doing a "good job" in class.

50.     However, despite the preceding showering of Ms. Allen with extremely positive personal appraisals by Dean Lausch of Ms. Allen doing an "outstanding, great and good job in classes", because of his stronger desire to eradicate the harassment/racial discrimination claim filed about his department and to simultaneously appease both his traditional institution of Caucasian staff and the white students inflamed by his staff, Dean Lausch conspired with the cabal to promote the defamatory PIPS.

Again, it is noted that Dean Lausch's personal observations of students, staff and Ms. Allen, had *de facto* contradicted and rendered the PIPs as worthlessly false. The use of these null and void PIPs to further harass Ms. Allen as incompetent/inferior and to discriminate in heinous contravention of MATC policies to discontinue her contract, constitutes denial of Ms. Allen's due process and equal protection under those MATC policies and the U.S. constitution. It is also unlawfully defamatory and a breach of contract.

**J.**     **Dean Lausch's PIP vehicle backfires when building a case to fire Ms. Allen.**

51.     On or about November 3, 2012, in the scheme and campaign of preparation to keep Ms. Allen on a PIP as part of his scheme to fire her, Dean Lausch sought input from Delisa Scott-Counseling Faculty, after she notified him about student concerns regarding the Pharmacology course taught by Ms. Allen; and that she had responded to students that *"Ms. Allen had no control over most of their concerns, in that it is the most difficult theory class in nursing, 4 hrs. long, and held once a week on Fridays after a full week of classes, etc."(emphasis added)*

52.     Predictably, rather than address the historical problems students encountered in the difficult Pharmacology program as proffered by Ms. Scott musing that the system of the Pharmacology program itself needed changes, Dean Lausch, in mean spirit, focused on the hearsay complaints in attempting to build on his pretextual case against Ms. Allen and further falsely defame her reputation and damage her career when by email he responded:

> "…I wonder if these are real issues for the students or if they were indirectly complaining about Taysheedra."

53.     Within minutes, Dean Lausch's malevolent intent to fuel his PIP vehicle with false denigration of Ms. Allen backfired when by email Ms. Scott objected to and discombobulated Dean Lausch's campaign to profile Ms. Allen as an incompetent/inferior African American:

> …They (the students) are fearful of talking to any of you…
> ***
> *"Again, most of the comments I heard were nothing new, and were heard long before Taysheedra was on board…the stress of this class and one or two others, has been around as long as I have been here, nearly twenty-five years." (emphasis added)*

54.     Still, despite Supervisor Dean Lausch's very positive appraisals based on his personal observations, he engaged in conduct antithetical to his known facts when he

maliciously continued to promote the defamatory PIPs which technically he had rendered incompetent, and otherwise worthless.

55.     And, by giving Ms. Allen a recap PIP dated December 17, 2012, Dean Lausch ensured that Ms. Allen was kept on a necessary PIP to give the Board the opportunity to fire Ms. Allen, when he so recommended.

56.      By email dated January 11, 2013 Dean Laush continued his search for negative rumor that he could use to fuel his PIP vehicle to drive Ms. Allen out of MATC when he heard from the MATC Union representing teachers, that the Union learned from a student that part-time instructor Dennis Farber (Caucasian) -*who at the time did not know Ms. Allen and had not ever observed her teach*- was in effect again doing his version of Ms. Ahern by "inappropriately communicating" false defamatory rumors to and inflaming students with commentary that "Ms. Allen is a horrible teacher and is about to be fired, should not be in teaching".

57.     Notably, the only way that Mr. Farber could have known of Dean Lausch's malicious subterfuge and scheming intent to undermine, falsely defame and soon terminate Ms. Allen, was from intended leaks from Human Resources and Dean Lausch.

58.      Incredibly, Dean Lausch did not ask Mr. Farber how he discovered MATC's intent to fire Ms. Allen as Mr. Miller of HR and he schemed in ¶¶ 36 and 42, *supra*, or where he got his information from. Nor did Dean Lausch seek to discipline Mr. Farber, in order to protect Ms. Allen and enforce MATC policies, as Dean Lausch in Paragraph 26, *supra*, stated such a person deserved for spreading such malicious and false defamatory information about an African-American instructor. Yet, even in view of the constitutional and MATC institutional harm being rained down upon Ms. Allen, Dean Lausch never sought to raise up a safe umbrella of justice to

protect her.  Dean Lausch simply wanted to know why the student sent the email about Mr. Farber to the Union.

59.     Mr. Farber by email of the same date January 11, 2013, corroborated the information of Ms. Scott's answer in Paragraphs 51-52, *supra*, which derailed Dean Lausch's PIP campaign vehicle off track in that his/the rumors were a very negative, but unfounded, unfair hearsay attack on Ms. Allen, when he apprised Dean Lausch:

> "…students consistently complain about their pharmacology course …The only thing I can reinforce with students is that their issues tend to be a trend…
>
> \*\*\*
>
> …I tend to not always be aware of the ***politics*** involved within the program…Things that I may hear, I guess I would consider to be ***rumors*** too. I am sorry if any of the discussions that have taken place in the clinical setting may have been construed by any student in a negative or attacking manner… (***emphasis added***)

**I.     Dean Lausch's scheme to keep Ms. Allen on the phony PIP despite improvement**

60.     Because, Ms. Allen would not be a probationary employee at the time Dean Lausch would seek to maliciously terminate her by non-renewal of her contract before the Board, he was advised in an email dated March 15, 2013 from MATC's Malika S. Evanco that *Ms. Allen would have to be on a PIP and showing no improvement to accomplish his goal.*

61.     So, in his desperate mission of egregious and demeaning subterfuge, in order to further undermine and falsely defame Ms. Allen, by email dated October 23, 2013 Dean Lausch conspired with Ms. Ahern to organize a meeting in order to "meet students to discuss and gather issues/concerns they were having with Ms. Allen".

62.     As noted in ¶¶ 19 and 29, this is the same Ms. Ahern that Dean Lausch had promised to stop from conducting this harassing/discriminatory type activity (see *supra* ¶ 29). And, this is the same Ms. Ahern that following an African American student rallying Caucasian

students to admit in the presence of Dean Lausch that Ms. Allen was a "good instructor", Ms. Ahern used campus security and local police, in front of students, to remove the Black student from campus to chill their use of and warn them that free speech supporting the African American Ms. Allen would be silenced and not tolerated. (see *supra* ¶¶ 19-22). This malicious conspiracy by Dean Lausch with Ms. Ahern on behalf of MATC to arrange and conduct meetings to solicit alleged student complaints against Ms. Allen, but disparately having security and police remove students from MATC premises to suppress 1st Amendment student expression of support for Ms. Allen, violates the due process and equal protection of Ms. Allen.

63.    This repeated unrestrained conduct of Ms. Ahern, aided and abetted by Dean Lausch and mimicked by Mr. Farber -all such conduct going undisciplined- means that Dean Lausch and HR never intended to do their job to promptly enforce the MATC policy on Harassment/Discrimination or order the conduct stopped, else in accord with the MATC Employee Handbook, p. 21, Ms. Ahern was guilty of insubordination, and at the least, her conduct and that of Mr. Farber, by Dean Lausch's admission (see¶ 26, *supra*) should have been disciplined. This refusal to enforce MATC policies to protect and be fair to Ms. Allen constitutes denial of due process and equal protection of the U.S. constitution.

64.    Thus, Dean Lausch intentionally and maliciously failed and refused to adhere to his promise to stop Ms. Ahern and other such denigrating and undermining conduct as cited *supra in* ¶¶ 19-22, 29, and 56-58. So, on behalf of MATC, in order to profile Ms. Allen as an incompetent/inferior African American and get rid of her internal complaint of harassment/ racial discrimination by terminating her, he aided and abetted false and defamatory conduct and is also complicit in violating the MATC harassment/discrimination policy (see *supra* ¶ 36).

65.     Remarkably, by Dean Lausch's written observation dated March 19, 2013, he again confirmed Ms. Allen's continued outstanding teaching of Pharmacology students when he personally observed her while teaching and approved of Ms. Allen's performance as "***well done!***" (***emphasis added***)

**J.     Dean Lausch's continuous harassment of Ms. Allen with a bogus PIP**

66.     Yet, on December 16, 2013, Dean Lausch remained true to his denigrating mission, stated in Paragraphs 36 and 42, *supra*, on behalf of the Caucasian staff and his elimination of the internal racial discrimination claim against his department, to rid MATC of Ms. Allen, when in preparation for presentation to the Board of his recommendation of non-renewal of her contract/termination, he kept her on a PIP bloated with repeated stale claims no longer in existence (i.e., St. Mary's, the tutor, FERPA), continuing rumors of negative hearsay, politics, failure to follow MATC procedure, untruths and in general calculated harassment.

**K.     Ms. Allen's 2ⁿᵈ  internal complaint, which noted MATC had not addressed her 1ˢᵗ**

67.     On or about November 20, 2013, Ms. Allen filed her second internal harassment/ discrimination complaint stating she was still receiving disparate treatment favoring Caucasian instructors and reminded MATC that as of two and a half years later, MATC (in violation of its promptness policy) still had not addressed or resolved her May, 11, 2011 complaint of Harassment/Discrimination (see *supra* ¶¶ 25-30).

**L.     Ms. Allen's filing of a discrimination/retaliation complaint with the State**

68.     On December 26, 2013, Ms. Allen, because of Dean Lausch's failure to fairly address her racial discrimination claims, filed a racial discrimination and retaliation complaint pursuant to the Wisconsin Fair Employment Law, alleging MATC had ignored her internal

complaints and she had been discriminated against since May 19, 2011. She also alleged

retaliatory and disparate treatment based on her African American race.

**M.      Dean Lausch's ongoing retaliation against Ms. Allen and Provost Webb's approval**

69.      On or about December 26, 2014 the State Agency mailed to MATC, by regular

U.S. mail, notification of Ms. Allen's racial discrimination/retaliation complaint.

70.      Over two months after Ms. Allen filed her racial harassment/discrimination and

retaliation complaint with the State of Wisconsin Agency, MATC further retaliated against Ms.

Allen when notwithstanding the shower of superlatives rained down on Ms. Allen's

performances and the failure to properly process, investigate and conclude her internal

harassment/racial discrimination claims, Provost Webb (Caucasian) perfunctorily adopted and

assimilated Dean Lausch's recommendation for nonrenewal of Ms. Allen's contract.

71.      On March 15, 2014, Ms. Allen injured her knee and Dean Lausch demanded that

Ms. Allen do clinical work that according to Ms. Allen and her doctor's notification, was work

she could not do at the time.

72.      By March 19, 2014, Dean Lausch noted that he could not establish that certain

negative items in the PIP continued to exist regarding Ms. Allen's performance which

invalidated the PIP. Yet, contrary to the written MATC improvement provision mandating that

she be taken off the PIP due to improvement, he kept them in his proposed recommendation to

encourage the MATC Board to terminate Ms. Allen by non-renewal of her contract.

73.      On May 14, 2014, Dean Lausch and Ms. Allen went before the MATC Board, but

she was not represented by anyone who articulated the averred critical facts of her case.

24

74.     a)     On May 14, 2014, the MATC Board (all Caucasian) listened to Dean Lausch present his PIP complaints, but Dean Lausch did not reveal to the Board the below crucial facts, including sections (b), (c), (d) and (e) that established the Board had no legitimate authority to non-renew Ms. Allen's contract in view of a failure to investigate harassment/racial discrimination complaints, and not only were the PIPs part of a discrimination scheme, invalid and counterfeit, but they were abjectly invalidated by his documented personal appraisals of her outstanding teaching abilities. Moreover, by the conspiracy of the "Caucasian staff, HR and Dean Lausch", Ms. Allen was intentionally being discriminatorily unprotected and undermined because of her skin color in that she was being profiled as an incompetent/inferior African American.

b)     Further, Dean Lausch did not reveal incontrovertible facts to the Board that showed after Ms. Allen filed her internal harassment/racial discrimination complaint, Mr. Miller of HR and he perniciously and maliciously made it a *fait accompli* matter that regardless of Ms. Allen's outstanding performances, they intended to punish and retaliate against her by enabling the conduct of the harassing and discriminating Caucasian staff by scheming and building a case to non-renew her contract.

c)     Thus, the evidence is that Ms. Allen had *never* been on a legitimate PIP to improve her performance, but on a pretextual PIP by HR and Dean Lausch intentionally designed by them as a vicious vehicle to discriminatorily drive her out of MATC all because: 1) Dean Lausch was complicit in conspiring and campaigning with his Caucasian staff to denigrate, demean and terminate Ms. Allen from MATC; 2) he wanted to end her internal complaint of harassment/racial discrimination without honoring MATC mandates to promptly and properly

investigate discrimination; 3) he was guilty of failing and refusing to enforce MATC policy to promptly abate racial discrimination; and 4) his repeated personal observations of Ms. Allen's outstanding teaching performances were inherently contradictory and antithetical to and invalidated his discriminatorily designed hearsay bloated PIPs.

d)      Moreover, Dean Lausch did not inform the Board that it was HR and he that were guilty of facilitating, enabling and spreading rumors that falsely profiled Ms. Allen as "an incompetent/inferior African American and the only reason she had a job was because she had played the race card, but still she was going to be fired"; nor did Dean Lausch inform the Board that he did nothing to stop his Caucasian staff from suppressing student support for Ms. Allen after Ms. Ahern was involved in causing a vocal Black student supporter of Ms. Allen to be removed from MATC premises by security and police; and he did not inform the Board that many of the hearsay complaints he attributed to Ms. Allen were actually about the pharmacology program itself and which complaints had existed without correction for over 25 years, which was 21 years before Ms. Allen was hired fulltime.

e)      Finally, Dean Lausch intentionally failed to inform the Board that despite his bogus PIPs, students taught by Ms. Allen in one of the toughest, if not the toughest, nursing course(s), were passing State licensing exams.

75.    a)      On May 14, 2014, the MATC Board, in considering Ms. Allen's uninvestigated claims of harassment/racial discrimination and Dean Lausch's written documented admissions of her outstanding performances which abjectly belied and invalidated Dean Lausch's PIPs and recommendation to non-renew her contract, knew that it did not have a valid PIP which would give it authority to non-renew her contract. Yet, the Board while

proceeding to act recklessly and *ultra vires*, remarkably cavalierly admitted that "matters should have been investigated, the HR department needed to "train supervisors (Dean Lausch) on how to supervise their employees and how to complete an effective evaluation'… "review of Dean Lausch and Human Resources *needs to occur" …*

   b) In view of, *inter alia*, the Board's knowledge noted in ¶ 75 (a) above, the Board acted with *malice aforethought* and despite Ms. Allen's U.S. constitution rights of 5th Amendment due process, 14th Amendment equal protection and MATC written mandates to honor and follow those laws, an all-white MATC Board, by a 6-2 vote, intentionally, prominently and with full knowledge, denied Ms. Allen's rights to have the equal opportunity of a prompt and fair investigation into her MATC and U.S. constitutional rights to not be harassed, falsely defamed, denied equal contract rights, wrongfully discharged and otherwise discriminated against because of the color of her skin.

   c) The MATC Board by its above conduct acknowledged that Dean Lausch had not properly recognized and honored Ms. Allen's U.S. constitutional rights and the protections provided by MATC to not be harassed and discriminated against because of the color of her skin.

   d) Yet, despite the MATC Board knowledge listed in ¶¶ 75 a), b) and c) above establishing that it had no authority due to the bogus PIPs to non-renew the contract of the outstanding performing Ms. Allen, and that Dean Lausch was complicit in the discrimination of Ms. Allen by participating in the discrimination and scheming to deny her a fair investigation to ensure due process and equal protection under the laws, the MATC Board recklessly and heinously adopted and assimilated the conduct and recommendation of Dean Lausch to breach

the contractual rules of MATC to deny a contract to Ms. Allen, and thereby discriminating against and wrongfully discharging her because of the color of her skin.

e)  In view of the Board's conduct in ¶¶ 75 a), b), c) and d), the MATC Board intended to discriminate against Ms. Allen by perniciously abdicating and abandoning its duty as State officials to fairly govern by perfunctorily adopting the heinous recommendation of Dean Lausch to non-renew Ms. Allen's contract even though it was confronted with compelling evidence that not only was Ms. Allen an outstanding performing instructor, but it was incontrovertible fact that Dean Lausch had failed and refused to provide Ms. Allen a proper MATC investigation and protection regarding her claims of harassment/racial discrimination.

76.  On May 14, 2014, by engaging in the conduct described, *inter alia,* in Paragraphs 74-75 *supra*, MATC by Dean Lausch, the Provost and MATC Board, on respective dates, discriminated against, falsely defamed, approved of retaliation and maliciously breached the contractual terms of Ms. Allen's employment with MATC, all because of the color of her skin.

77.  On July 16, 2014, Ms. Allen filed another charge with the Wisconsin Fair Employment Law agency protesting MATC's termination of her contract as a result of racial harassment/discrimination and retaliation.

78.  On or about October 3, 2014, Ms. Allen filed an additional race and disability discrimination claim that she was also terminated because following notification by her doctor that she could not do certain work due to her March 15, 2018 knee injury, Dean Lausch would not allow her to use sick leave and falsely listed in his recommendation of non-renewal that she would not complete work as assigned.

79.  On January 5, 2018, Ms. Allen received her right to sue letters.

80.     Because of the conduct of the MATC defendants as alleged in **NATURE OF THE CASE** and Paragraphs 1 through 79, plaintiff has suffered lost wages, lost opportunity, humiliation, degradation to her reputation, severe damage to her career in the State of Wisconsin education system, anguish and pain from the harassment, defamation, discrimination and retaliation.

## PLAINTIFF'S FEDERAL CAUSES OF ACTION

81.     Plaintiff herein re-alleges and incorporates by reference allegations  set forth in **NATURE OF THE CASE** and Paragraphs 1 through 80 in support of her claims that she was discriminated against because of her race in violation of Title VII Civil Rights Act of 1964 and denied due process and equal protection of the laws in violation of the Fifth and Fourteenth Amendments of the United States Constitution and she was treated differently in terms and conditions of employment as she sought to advance her career in the State of Wisconsin education system represented by its agent Madison Area Technical College. More specifically, Ms. Allen was denied her right to enjoy an employment contract all because of her African American/Black race. And, the State, because of Ms. Allen's African American/Black race, deprived her of contractual job property rights in violation of the due process and equal protection clauses of the United States Constitution.

## PLAINTIFF'S STATE CAUSES OF ACTION

82.     Plaintiff, herein alleges and incorporated by reference allegations referenced in **NATURE OF THE CASE** and allegations 1 through 80, in support of Ms. Allen's claim that her reputation has been repeatedly and maliciously defamed by defendants' false statements, policies and practices.

83.     Plaintiff herein alleges and incorporates by reference allegations referenced in **NATURE OF THE CASE** and allegations 1 through 80 in support of her claim that defendants because of her race as an African American/Black woman breached the employment contract, that it created with Plaintiff and continued to effectuate until May 14, 2014, at which time it conspired in bad faith to discriminatorily and wrongfully discharge Plaintiff from employment in the educational system in the State of Wisconsin.

84.     Plaintiff herein alleges and incorporates by allegations referenced in **NATURE OF THE CASE** and allegations 1-through 80 that she was wrongfully denied sick leave/injury accommodations, discharged without good cause and in retaliation for trying to develop and advance her career in the State of Wisconsin education system.

**PRAYER FOR RELIEF**

83.     Because of the acts and conduct of the named defendants were reckless, wanton, malicious and callous in utter disregard for Plaintiff's rights as protected under the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1981, 1983 and 2000e and Title VII of the Civil Rights Act, and State protection against defamation, breach of contract due to her race, and wrongful dischaerge, Plaintiff hereby demands punitive damages.

84.     Plaintiff further requests the Court to grant the following:

     a.     Unspecified compensatory and punitive damages with interest;

     b.     Reinstatement to her nursing instructor position without loss of seniority and other benefits that would have been earned, but for the discriminatory and wrongful interruption of her employment;

c.      Cease and desist from discriminatorily placing Ms. Allen on a
discriminatory PIP;

d.      Cease and desist from failing to honor her request for sick leave/injury
accommodations;

e.      properly and promptly investigate any Harassment/Racial Discrimination
claims;

f.      Properly and fairly apply the rules and regulations of MATC to her and
other African Americans;

g.      Cease and desist from discriminating against African American staff and
students by denying them U.S. Constitution 1st Amendment Right to free
speech because of their skin color;

h.      Cease and desist from denying 5th and 14th Amendments rights,
respectively, to due process and equal protection under the laws;

i.      Backpay with interest and loss of income from professional
opportunity denial;

j.      Reasonable attorney fees and costs; and

k.      Such other relief as the Court may deem appropriate.


WHEREFORE, all of the alleged acts herein are subject to Civil Rights Acts U.S.C. §§ 1981,
1983 and 2000e and State claims. Plaintiff has a right to a jury trial.

85.      Plaintiff hereby demands a jury trial.

Dated this _31st day of August 2018          Respectfully submitted

                                                  _/s/     Rocky L. Coe

                                                  Rocky L. Coe, Esq.
                                                  State Bar No. 1016642
                                                  Attorney for the Plaintiff
                                                  Taysheedra D. Allen/Noll

**Address**
COE LAW OFFICES
3873 North Sherman Blvd.
Milwaukee, Wisconsin 53216
414-449-1755
Fax 414-444-2691