IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAYSHEEDRA D. ALLEN-NOLL,

        Plaintiff,

    v.

MADISON AREA TECHNICAL COLLEGE,
*et al.*,

        Defendants.

OPINION AND ORDER

18-cv-216-slc

---

In this civil action brought under federal and state law, plaintiff Taysheedra Allen-Noll alleges that she was harassed, subject to different terms and conditions of employment, and fired from her position as a nursing instructor with defendant Madison Area Technical College because of her race and because she complained about racial discrimination and harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the due process and equal protection clauses of the Fifth and Fourteenth Amendments (as enforced through 42 U.S.C. § 1983), and Wisconsin state defamation, breach of contract, and wrongful discharge law. Before the court is defendants' motion to dismiss Allen-Noll's amended complaint on several grounds, including statute of limitations, insufficient allegations of discriminatory intent, individual liability, failure to state a constitutional claim, and preemption of the state law tort claims. Dkt. 16.

For the reasons stated below, I am granting the motion in part and denying it in part. I am dismissing Allen-Noll's Title VII claim against the individual defendants; her § 1981 claim against defendants Webb, Daniels, and Stoner; her equal protection and due process claims against defendants MATC, the board, Webb, and Daniels; her equal protection claim against Stoner; and all of her state law tort claims. I am denying the motion with respect to the Title

VII claim against MATC and the board; the § 1981 claim against MATC, the board, and Lausch; the equal protection claim against Lausch; and the due process claim against Lausch and Stoner.

Although the parties' briefs contain arguments about the facts and how they should be construed or characterized, at the dismissal stage, the court must accept as true all well-pled facts in the complaint and must draw all reasonable inferences in favor of the non-moving party. *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Allen-Noll alleges the following facts in her amended complaint:

## FACTS ALLEGED

### I. Background and the Parties

Plaintiff Taysheedra Allen-Noll is an African American woman who resides in Deforest, Wisconsin. She was first employed by defendant Madison Area Technical College (MATC) as a part-time nursing instructor in the Certified Nursing Assistant Program in January 2009. In December 2009, MATC hired her as an "emergency hire" and then promoted her to a full-time instructor position in the Practical Nursing program in 2010. She was the only African American instructor out of 64 instructors in the program. Allen-Noll remained in that position until May 14, 2014, when MATC allegedly refused to renew her contract because of her race and in retaliation for complaining about race discrimination and harassment.

Defendant MATC is a state employer and member of the Wisconsin Technical College System. Wis. Stats. Ch. 38. It is governed by defendant Board of Madison Area Technical College. At all times relevant to this lawsuit, defendant Mark Lausch was Dean of the Center for Health and Safety Education and Allen-Noll's immediate supervisor, defendant Jack Daniels

was the president of MATC, defendant Terrance Webb was the provost, and defendant Carolyn Stoner was chair of the board.

## II. 2010-2011 School Year

### A. Lausch and Co-workers Criticize Allen-Noll's Teaching

Beginning in July 2010, Allen-Noll's Caucasian colleagues began using student class time to spread "hostile rumors" about her and make "slanderous" statements that she did not adequately prepare her students to pass their licensing exams. Allen-Noll believes that her colleagues acted this way because she is black. Dean Lausch knew about and participated in the harassment.

On February 17, 2011, Lausch and fellow instructor Di Polly met with students in Allen-Noll's class to solicit and encourage complaints about Allen-Noll. After an African American student disagreed with the Caucasian students in the class and convinced some of them to admit that Allen-Noll had been a good instructor, some of the Caucasian students called the African-American student a "crazy bitch and psychotic tramp." When Tracy Ahern, another instructor, learned about the African American student's support of Allen-Noll, she had campus security seize the student in Allen-Noll's classroom the next day and remove her from the campus. Lausch asked Allen-Noll why campus security was in her classroom but did not ask Ahern about the incident or discipline Ahern in any way.

## B. Removal from Clinical Teaching Site

On May 10, 2011, Allen-Noll was removed from the St. Mary's clinical teaching site following a complaint from the director there, Barbara Hauge. Allen-Noll considered the complaint suspicious because Hauge is a friend of one of the MATC instructors (Ms. Gorder) who had been harassing her and because Hauge made the complaint three months after Allen-Noll finished at St. Mary's. Allen-Noll later learned that Gorder had sent Lausch an email in April 2011, making disparaging comments about Allen-Noll's performance and stating that she had urged Hauge to file a complaint with Lausch.

## C. Allen-Noll's First Internal Complaint

On May 11, 2011, Allen-Noll filed an internal complaint with MATC's human resources department, alleging racial harassment and discrimination. On May 12, 2011, Lausch responded to the complaint in an email to Dave Miller in human resources, stating that he found it hard to believe that Allen-Noll's colleagues would be making things up and that they believed that Allen-Noll was doctoring student grades.

In a memorandum dated June 1, 2011, Dave Miller told Allen-Noll that Lausch did not consider her removal from St. Mary's "to be a disciplinary step in any way." He also assured Allen-Noll that Lausch knew that Ahern inappropriately discussed her opinion of Allen-Noll with students and would put a stop to it. However, Lausch did not honor his promise and stop the harassment. As far as Allen-Noll knew, no one disciplined or talked to either Gorder or Ahern.

**D. Continued Complaints Against Allen-Noll**

Meanwhile, MATC staff made unfounded complaints to Lausch about Allen-Noll's performance. In a May 24, 2011 email to Lausch, Gorder stated that Allen-Noll, had not demonstrated the open communication and coordination necessary to teach a particular refresher course. On May 18, 2011, a Caucasian tutor filed a complaint on behalf of several students after the semester exams, criticizing Allen-Noll's teaching abilities. However, Lausch told Allen-Noll that "all is well" and the tutor "was just happy that [he] heard her out."

Allen-Noll was not disciplined for her behavior, performance, or any other employment matters. In fact, in an email dated August 9, 2011, Lausch acknowledged to Allen-Noll's new mentor that she was doing a great job in class. Lausch also wrote in the email that "[h]er issue is that the P.N. faculty simply do not like her. I cannot tell if it is race-related or simply personality conflicts. I think it is a combination of Tay being young, energetic, and her race that have alienated her from the faculty." On December 20, 2011, Lausch again praised Allen-Noll's performance, writing that: "Attached is my 'Faculty Professional Growth Review Administrative Assessment' form from my observation of your class last month. I thought you did an outstanding job. . . . I am honored to be surrounded by such professional faculty members as yourself."

**II. 2011-2012 School Year**

**A. Lausch Seeks to Avoid Renewing Allen-Noll's Contract**

Despite the his praise for Allen-Noll, Lausch was looking for a way to avoid renewing Allen-Noll's contract. On February 23, 2012, Miller in human resources sent an email to Lausch

stating that "if we want to look at possible non-renewal, I need a listing of issues that have come up with her, when, what we did about them, etc. Most important would be issues that you have addressed with her prior to her bringing the harassment complaints to our attention." Miller emailed Lausch again five days later, stating that "we really need to focus on this part of it and start building our case. . . My quick gut reaction says that those things would not be enough for us to consider non-renewal AT THIS TIME (sic), but as part of building on, would be something to work with."

### B. Performance Improvement Plan

On May 17, 2012, Lausch put Allen-Noll on a performance improvement plan (PIP), which Allen-Noll characterizes in her amended complaint as unwarranted, "null and void," "bogus," "defamatory," and a breach of contract. (Dkt. 14 at 17-18). Although it is not entirely clear from the allegations in the complaint, it appears that Lausch noted in the PIP that Allen-Noll was a poor teacher, had violated "FERPA" (student privacy), failed to follow school procedures, and would not complete work as assigned.

### III. 2012-2013 School Year: Continued Harassment and PIP Renewal

On October 5, 2012, Lausch observed Allen-Noll's performance and told her that she was doing a "good job" in class. However, around November 3, 2012, Lausch sought input from a counseling faculty member, Delisa Scott, about Allen-Noll's pharmacology class and allegedly learned from Scott that the class was "the most difficult theory class in nursing" and that Allen-Noll "had no control over most of [her students'] concerns." Although Lausch pondered in his

response email to Scott that "I wonder if these are real issues for the students or if they were indirectly complaining about Taysheedra," Scott assured him in an email that "most of the comments I heard were nothing new, and were heard long before Taysheedra was on board."

Around November 29, 2012, fellow instructor Dennis Farber (who is Caucasian) began spreading rumors that Allen-Noll was an incompetent instructor and horrible teacher and alluded to her "pulling the race card" to save her job, presumably referring to Allen-Noll's May 2011 complaint. Farber is a part-time instructor who never observed Allen-Noll in the classroom. Also around this time, the MATC teachers' union informed Lausch that a student had written them about Farber's statements, but Lausch did not take any action against Farber. However, on December 17, 2012, Lausch issued Allen-Noll a "recap" PIP, which she alleges was baseless.

In an email to Lausch dated January 11, 2013, Farber explained his comments, stating that students "consistently complain about their pharmacology course," admitting that things he hears would be considered rumors, and apologizing for discussions that students may have construed "in a negative or attacking manner." On March 19, 2013, Lausch noted in a written observation that Allen-Noll's teaching of pharmacology students was "well done!" Yet four days earlier, Lausch learned via email that because Allen-Noll was not a probationary employee, she could be terminated only if she was on a PIP and showing no improvement.

## IV. 2013-2014 School Year

### A. Allen-Noll Complains of Race Discrimination

On October 23, 2013, Lausch sent an email to Ahern asking her help in organizing a meeting to "meet students to discuss and gather issues/concerns they were having with Ms.

Allen."  On November 20, 2013, Allen-Noll filed her second internal complaint of racial harassment and discrimination and pointed out that MATC had not yet addressed her May 11, 2011 complaint.

On December 16, 2013, Lausch informed Allen-Noll that she would remain on the recap PIP, which repeated the same "stale" claims that he raised in the original PIP.  Ten days later, on December 26, 2013, Allen-Noll filed an administrative complaint with the Wisconsin Equal Rights Division (ERD) and the Equal Employment Opportunity Commission (EEOC), alleging racial discrimination and retaliation.  She alleged that MATC had ignored her internal complaints and that she had been discriminated and retaliated against since May 19, 2011.

### B.  Allen-Noll's Contract Not Renewed

Around February 2014, Provost Webb accepted Lausch's recommendation that MATC not renew Allen-Noll's contract.

On March 15, 2014, Lausch demanded that Allen-Noll perform her clinical work even though she had injured her knee and her doctor had advised her that she was unable to do clinical work.  On March 19, 2014, Lausch used the PIP as grounds to recommend that the MATC Board not renew Allen-Noll's contract, even though he knew that Allen-Noll had improved and the problems identified in the PIP no longer existed.

On May 14, 2014, Allen-Noll and Lausch appeared before the Board of MATC to present their respective positions.  Allen-Noll was not represented by counsel at the hearing. Lausch presented his PIP complaints to the board but failed to tell them that the PIP was no longer valid or that he and others had been harrasing Allen-Noll and trying to get rid of her

because of her race. Allen-Noll then presented her response. Even though the Board knew that Allen-Noll had complained about discrimination and harassment, that those complaints had not been investigated, and that Lausch had made numerous positive comments about her performance but still placed her on a PIP, it voted 6 to 2 to adopt Lausch's recommendation not to renew Allen-Noll's contract.

### C. Allen-Noll's Additional Complaints of Race Discrimination and Retaliation

On July 16, 2014, Allen-Noll filed a second administrative complaint with the ERD and EEOC, alleging MATC "terminat[ed] her contract as a result of racial harassment/discrimination and retaliation." On October 3, 2014, Allen-Noll amended her administrative complaint to include an additional race and disability claim that she was terminated because she could not do certain work due to a knee injury for which Lausch would not allow her to use sick leave. On January 5, 2018, Allen-Noll received right to sue letters on both of her administrative complaints.

### ANALYSIS

### I. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the complaint's legal sufficiency. A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.'" *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court of Appeals for the Seventh Circuit has explained that it is generally sufficient that the "complaint contain[] factual allegations identifying (1) who discriminated against [the plaintiff]; (2) the type of discrimination that occurred; and (3) when the discrimination took place." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). *See also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.")

## II. Summary of Claims

Plaintiff Taysheedra Allen-Noll generally alleges that she was subject to harassment, discrimination, retaliation, and defamation because of her race and seeks to state claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the due process and equal protection clauses of the Fifth and Fourteenth Amendments (as enforced through 42 U.S.C. § 1983), and Wisconsin state defamation, breach of contract, and wrongful discharge law. She has sued MATC and its board, as well as Lausch, Webb, Daniels, and Stoner in their individual capacities.[1] It is unclear whether MATC or its board are suable entities, which Fed. R. Civ. P. 17(b) instructs is a matter to be determined under state law, but neither party has raised the issue, so I will not address it at this time.

---

[1] Although Allen-Noll's original complaint seemed to name defendants Daniels, Webb, and Stoner in both their individual *and* official capacities, her amended complaint does not allege any official capacity claims.

Defendants have moved to dismiss Allen-Noll's amended complaint on the following grounds: (1) she cannot pursue a Title VII claim against the individual defendants; (2) her allegations do not permit an inference that defendants acted with discriminatory intent as required under Title VII or § 1981; (3) her Title VII claim is barred by the applicable statute of limitations; (4) her general allegations of denial of due process and equal protection fail to state a valid claim for relief; (5) she fails to allege any personal involvement on the part of the individual defendants as required under §§ 1981 or 1983; and (6) the Wisconsin Fair Employment Act (WFEA) and the Workers' Compensation Act preempt her state law tort claims.[2] I will address these arguments separately below.

## III. Discrimination, Harassment, and Retaliation Claims

Allen-Noll's allegations of racial harassment, discrimination, and retaliation arise under Title VII and § 1981. Title VII prohibits employers from discriminating against their employees based on race, 42 U.S.C. § 2000e–2(a)(1), and prohibits retaliation or discrimination against an employee "because he has opposed any practice made an unlawful practice by this subchapter," 42 U.S.C. § 2000e–3(a). Section 1981 prohibits racial discrimination and retaliation against employees when a contractual relationship exists between the employer and employee. *Thompson v. Mem. Hosp. of Carbondale*, 625 F.3d 394, 402-03 (7th Cir. 2010); *Hobbs v. City of Chi.*, 573 F.3d 454, 460 (7th Cir. 2009). Although the statutes differ in the types of discrimination they

---

[2] In their initial motion to dismiss, defendants also contended that the WFEA does not provide a general private right of action outside the administrative process unless it is a claim for discrimination occurring between July 1, 2009 and April 19, 2012. *Sharp v. Stoughton Trailers, LLC*, 2016 WL 3102241, at *3 (W.D. Wis. June 2, 2016) (explaining WFEA preemption and its very limited exception). However, because Allen-Noll's amended complaint does not include a WFEA claim, it is not necessary to address this argument.

proscribe, "the methods of proof and elements of the case are essentially identical." *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 671-72 (7th Cir. 2011) (quoting *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)).

Defendants challenge Allen-Noll's claims under these statutes on a few different grounds, which I discuss below.

### A. Pleading Discriminatory Intent

Defendants contend that Allen-Noll's conclusory allegation that defendants treated her adversely because of her race is insufficient on its own to state a claim under either Title VII or § 1981. They argue that Allen Noll is required to allege more with respect to defendants' intent in order to surpass the plausibility threshold. This argument is not persuasive at the dismissal stage because the Court of Appeals for the Seventh Circuit repeatedly has stated that "[t]he pleading requirement for employment-discrimination claims is minimal." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828-29 (7th Cir. 2017).

In support of their argument, defendants rely primarily on cases decided at summary judgment or after a jury trial, an approach that fails to acknowledge that this case is only at the pleading stage. *E.g., E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2031-32 (2015) (summary judgment); *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014) (summary judgment). Defendants cite one case considering the sufficiency of a pleading, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 876-84 (7th Cir. 2012), in which employees of a brokerage house challenged an incentive-retention system as having a disparate impact on black brokers. *McReynolds* is distinguishable because it involved a bona fide production-based

compensation system under 42 U.S.C. § 2000e–2(h), for which it is necessary to plead a specific intent to discriminate. In contrast, Allen-Noll's amended complaint presents "standard employment discrimination claims that do not present analogous issues regarding the pleading of intent." *See Gosey v. Aurora Med. Ctr.*, 975 F. Supp. 2d 961, 973 (E.D. Wis. 2013), *aff'd in part, vacated in part*, 749 F.3d 603 (7th Cir. 2014) (drawing same distinction with *McReynolds*).

The Seventh Circuit consistently has held that plaintiffs bringing standard discrimination claims are not required to include allegations that would establish a prima facie case of discrimination. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (criticizing district court for relying on "summary judgment decisions that addressed not the content of complaints but the evidence needed to take a claim to a jury"). To state a claim of race discrimination, a plaintiff need only identify the type of discrimination that she thinks occurred (racial), by whom, and when it occurred. *Clark*, 709 Fed. Appx. at 828; *Swanson*, 614 F.3d at 405. *See also Tate v. SCR Medical Transportation*, 809 F.3d 343, 346 (7th Cir. 2015) (plaintiff need only "aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex"); *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 781-82 (7th Cir. 2007) (stressing simplicity of pleading Title VII discrimination claim). As the court of appeals has explained, "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson*, 758 F.3d at 827 (sufficient for plaintiff to identify which positions she sought and was denied and attribute denial to sex discrimination).

This minimal pleading standard also applies to race discrimination claims based on harassment, a hostile work environment, or constructive discharge. As the court of appeals

explained in *Carlson*, a district court should not dismiss such claims at the pleading stage if the "[hostile] situation is identified and the unlawful motivation alleged." *Id.*, 758 F.3d at 830. This is particularly true where the plaintiff "include[s] specific examples of poor treatment." *Id.* The court emphasized that, even if the conditions "described in her complaint may not ultimately qualify as intolerable, [] we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required." *Id.*

Here, Allen-Noll alleges that beginning in 2011, her colleagues and supervisor criticized her teaching style and performance, took actions to get her removed from a clinical teaching position, and solicited negative comments from her students, all because she is African American. Allen-Noll also alleges that when she later complained about racial harassment, no one took any action to investigate or to stop it from occurring; instead, she was placed on a series of performance improvement plans in 2012 and 2013 that eventually led to the non-renewal of her contract in 2014. Under the standards applicable at the pleading stage, Allen-Noll has alleged adequately that she was subjected to discrimination and harassment based on her race.

## B. Title VII Statute of Limitations[3]

A Title VII plaintiff must first file a complaint with the Equal Employment Opportunity Commission within 300 days of "when the defendant has taken the action that injures the

---

[3] Defendants stated in an introductory section of their brief that they also were challenging Allen-Noll's § 1981 claim as barred by the applicable statute of limitations, which would appear to be four years in this case. *See Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 269 (7th Cir. 2004) (claims "premised on conduct which took place after the formation of [the] employment contract" subject to four-year statute of limitations in 28 U.S.C. § 1658). However, because defendants never developed that argument, I have not considered it. In any event, it would appear to fail for the same reasons as their Title VII statute of limitations argument.

plaintiff." *Haynes v. Indiana Univ.*, 902 F.3d 724, 730 (7ᵗʰ Cir. 2018); 42 U.S.C. § 2000e-5(e)(1). A charge filed beyond the 300-day window is time-barred and, in turn, cannot be the subject of a civil suit. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 536 (7ᵗʰ Cir. 2013) (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). In this case, Allen-Noll filed her first administrative complaint with the ERD and EEOC on December 26, 2013. Subtracting 300 days from this filing date yields March 1, 2013 as the earliest date that Allen-Noll's charge could reach. Therefore, Allen-Noll's claim must be based on alleged discriminatory conduct that occurred after March 1, 2013.

The only alleged conduct occurring after March 1, 2013 and within the statutory period is the October 23, 2013 meeting that Lausch and Ahern organized with Allen-Noll's students to discuss their concerns and MATC's decision not to renew Allen-Noll's contract. Defendants argue that Allen-Noll fails to allege sufficient facts to suggest that these actions were motivated by race, pointing out that Allen-Noll alleges only that Lausch "conspired" with Ahern and that the Board simply reached a faulty conclusion by voting against her contract renewal. I disagree. A full and fair reading of the complaint shows that Allen-Noll alleges that both acts were based on her race and represented a continuing pattern of discriminatory and harassing conduct by MATC employees toward her.

Defendants also contend that Allen-Noll is time-barred from relying on any conduct occurring more than 300 days prior to the date she filed her EEOC charge. However, these earlier incidents may be actionable by virtue of the "continuing violations" doctrine, which "allows a court to consider as timely all discriminatory conduct relevant to a claim, so long as there is sufficient evidence of a pattern or policy of discrimination." *Haugerud v. Amery Sch. Dist.*,

259 F.3d 678, 690 (7th Cir. 2001). Further, in the context of harassment, the Supreme Court has held that incidents of harassment that occurred outside the limitations period can be considered timely if they were part of a series of related incidents that continued into the statutory time period. *Morgan*, 536 U.S. at 105; *see also Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) ("A violation is 'continuing,' signifying that a plaintiff can reach back to its beginning even if the beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct."). This rule is based on the view that the claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (citing 42 U.S.C. § 2000e-5(e)(1)). In other words, because the "unlawful employment practice" is not complete until the last act of harassment concludes, older incidents may be considered timely because they are part the same "practice" as the newer incidents. *Raymond v. CoVantage Credit Union*, 2017 WL 3017046, at *3 (W.D. Wis. July 14, 2017).

Allen-Noll alleges that the defendants engaged in a pattern of discriminatory conduct and harassment that began in 2011, caused her removal from a clinical position, formed the basis for discriminatory and retaliatory PIPs and "recap" PIPs in 2012 and 2013, and resulted in the non-renewal of her contract in 2014. At this early stage in the proceedings, Allen-Noll's allegations suffice to support an inference that her employer's allegedly discriminatory conduct was part of a continuing violation, so that all of this conduct can be considered timely.

Defendants suggest that Allen-Noll should have known at a much earlier date that she was the "victim of actionable harassment" and could have sought relief from the ERD or EEOC long before December 2013, *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir.

16

1999) (internal citation omitted) ("Where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she 'cannot reach back and base her suit on conduct that occurred outside the statute of limitations.'"). This is a reasonable observation, but it raises a question that is best decided by summary judgment or at trial.

## IV. Equal Protection and Due Process

In her amended complaint, Allen-Noll identifies six ways that her equal protection and due process rights were violated: (1) the removal from her classroom of a black student who was supporting her and seeking to vindicate her reputation; (2) Lausch failed to take any official or disciplinary action as mandated by the employee handbook to stop the harassment against her; (3) Lausch failed to address and resolve her May 2011 complaint of harassment and discrimination; (4) Lausch imposed spurious PIPs on her in order to discontinue her teaching contract; (5) Lausch and Ahern arranged meetings to solicit student complaints against her; and (6) Lausch recommended–and the MATC board voted–not to renew her contract without providing a fair process. *See* Am. Cpt., dkt. 14 at ¶¶ 20, 30, 38, 50, 62-63, 75.

As an initial matter, I note that Allen-Noll's claims rest on the assumption that the due process and equal protection clauses provide a general entitlement to fair treatment from all government officials in every circumstance. While fairness is a primary goal of both clauses, *see Lassiter v. Dep't of Soc. Servs. of Durham Cty., N. C.*, 452 U.S. 18, 24 (1981), claims brought under them require proof of particular elements that Allen-Noll largely ignores. I will address defendants' objections to the constitutional claims separately:

## A. Equal Protection

Defendants argue that to state an equal protection claim, Allen-Noll must allege that MATC used a classification or imposed a burden or conferred a benefit on one class of persons to the exclusion of others without a sufficient justification. In support of their argument, they cite *Monarch Beverage Co. v. Cook*, 861 F.3d 678, 682 (7th Cir. 2017), in which the Seventh Circuit explained that "[t]he equal-protection guarantee is 'concerned with governmental classifications that 'affect some groups of citizens differently than others.'" However, *Monarch* involved an equal protection challenge to a statute that allegedly imposed an unfair burden on beer distributors, and the quoted language explains the standard for "class-of-one" cases, which the court did not even apply in *Monarch*. *Id.* (distinguishing Monarch's claim from class-of-one case, which may include selective enforcement of criminal statute or withholding of government benefits or services).

Defendants are confounding two distinct equal protection doctrines: class-of-one cases in which the plaintiff alleges that public officials treated her differently than other similarly-situated persons for an illegitimate or irrational reason, and employment discrimination cases in which the plaintiff alleges differential treatment based on a protected class. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (distinguishing class-of-one equal-protection claims from those alleging discrimination in public employment, which import prima facie case requirements from Title VII doctrine). The Seventh Circuit has made clear that employment discrimination cases such as this one are subject to the same analysis as Title VII claims; "the only difference is that a Title VII claim is against an employer, while an equal protection claim is against individual employees." *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir.

2007).  I already have found that Allen-Noll's allegations that she was treated differently in the terms and conditions of employment because of her race are sufficient to state a claim under Title VII.  Perforce, they also are sufficient to state an equal protection claim.

### B.  Due Process

Due process can involve two types of claims: substantive and procedural.  "Procedural due process rights guarantee that the state not deprive an individual of his or her property without providing adequate procedural safeguards," whereas the right to substantive due process is "more nebulous, and typically employed by courts to protect against arbitrary state action that shocks the conscious."  *Markadonatos v. Vill. of Woodridge*, 739 F.3d 984, 988 (7th Cir. 2014), *opinion vacated on other grounds*, 760 F.3d 545 (7th Cir. 2014).  Allen-Noll does not identify what type of due process claim she is bringing, but because she generally alleges that defendants deprived her of liberty and property, I will assume that she intends to bring a procedural due process claim.[4]

---

[4] Even if Allen-Noll intended to bring a substantive due process claim, she may not do so.  "The Supreme Court has repeatedly cautioned against expanding the contours of substantive due process." *Catinella v. County of Cook, Ill.*, 881 F.3d 514, 518 (7th Cir. 2018) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)).  "Substantive due process claims can address harmful, arbitrary acts by public officials[,] [b]ut such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." *Geinosky v. City of Chi.*, 675 F.3d 743, 750 (7th Cir. 2012).  "[T]he Court has limited the reach of the substantive component of the due-process guarantee to cases involving abuse of governmental power so arbitrary and oppressive that it shocks the conscience," *Catinella*, 881 F.3d at 519, or interferes with the "fundamental rights of marriage, reproduction, child-rearing, and bodily integrity," *Viehweg v. City of Mount Olive*, 559 F. Appx. 550, 552 (7th Cir. 2014) (citing *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012)).  Although Allen-Noll's allegations of harassment are troubling, she has not pleaded facts suggesting a deprivation that "shocks the conscience" in the sense required in substantive due process cases.  *Compare Rochin v. California*, 342 U.S. 165, 172 (1952) (forcible stomach pumping to retrieve swallowed evidence violates substantive due process), *with Geinosky*, 675 F.3d at 750-51 (explaining that, although issuing 24 bogus parking tickets constituted deliberate and unjustified official harassment, conduct did not violate substantive due process).

To state a claim for a procedural due process violation, a plaintiff must allege: (1) a liberty or property interest protected by the constitution; (2) a deprivation of that liberty or property interest; and (3) a denial of due process. *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7ᵗʰ Cir. 2017). Defendants argue that Allen-Noll's allegations do not suggest that she was deprived of any liberty or property interest protected by the constitution. Although Allen-Noll recites various actions taken by Lausch and her colleagues that "defamed" her or deprived one of her student's First Amendment rights in discussing her due process claims, she fails to develop any argument as to how or why these actions impinge *her* liberty or property. As defendants correctly point out, mere "defamation by a public official does not violate the Due Process Clause," *Fritz v. Evers*, 907 F.3d 531, 533 (7ᵗʰ Cir. 2018) (*citing Paul v. Davis*, 424 U.S. 693, 712 (1976)), and Allen-Noll "has no cognizable liberty interest in h[er] reputation," *Mann v. Vogel*, 707 F.3d 872, 878 (7ᵗʰ Cir. 2013) (quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7ᵗʰ Cir. 2005)).

Courts have recognized an actionable liberty interest when a plaintiff has suffered an injury to her reputation *and* has been deprived of a previously-held legal right or status (commonly referred to as the "stigma plus" test), but that type of claim requires both damage to the plaintiff's reputation and the inability to find new employment in the plaintiff's chosen field because of it. *Id.*; *Schepers v. Comm'r, Ind. Dep't of Corr.*, 691 F.3d 909, 914 (7ᵗʰ Cir. 2012). In addition, Allen-Noll's allegations that MATC failed to follow its own rules or handbook is not a violation of due process. *See Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 571 (7ᵗʰ Cir. 2016) ("We have tirelessly reminded litigants that our determination of whether the

requirements of federal due process were satisfied is different from a determination of whether there was perfect compliance with an institution's rules.").

In any event, the crux of Allen-Noll's due process claim is that she lost her job, and she makes a persuasive argument that she had a protected property interest in her continued employment at MATC. A public employee may have a property interest in her job if she has a "legitimate expectation of continued employment," which often is shown "through contractual language limiting the [employer]'s discretion to fire" him. *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 686 (7th Cir. 2014); *see also Grant*, 870 F.3d at 571 (noting public employee who can only be terminated for good cause has constitutionally protected property interest in continued employment). Allen-Noll does not discuss the terms of her contract in her briefs, but she alleges in her amended complaint that Lausch had been told that Allen-Noll could be terminated only if she was on a PIP and showing no improvement. This fairly allows the inference that MATC could terminate Allen-Noll only for cause. *See Powers v. Richards*, 549 F.3d 505, 511 (7th Cir. 2008) (policy or contract language prohibiting employee from being dismissed without just cause generally suffices to create property interest). Although defendants say that Allen-Noll was not a tenured employee, I infer from her allegations that there was at least some limit on MATC's ability to fire her or to choose not to renew her contract.

Defendants also contend that Allen-Noll cannot state a due process claim because she received notice and a hearing concerning the decision not to renew her contract. In particular, they argue that the PIPs put Allen-Noll on notice and that she had an opportunity to be heard before the board voted to end her contract. Allen-Noll counters that the PIPs were invalid and discriminatory and the hearing was biased and flawed. That's enough to survive dismissal. *See*

*Grant*, 870 F.3d at 571 ("The cornerstone of due process is notice and the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). There will come a time when Allen-Noll will have to present evidence establishing that the defendants denied her meaningful notice and a meaningful opportunity–assuming that she has a property interest in her employment–but not today. Her allegations are sufficient at this early stage to state a procedural due process claim.

## V. Proper Defendants for Federal Claims

### A. No Individual Liability Under Title VII

Defendants correctly point out, and Allen-Noll does not dispute, that Title VII authorizes suits against employers, not employees. *U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995); *Harris v. Nevada Corp.*, 2010 WL 4922515, at *2 (W.D. Wis. Nov. 29, 2010). Moreover, the Court of Appeals for the Seventh Circuit has held repeatedly that a "supervisor does not, in his individual capacity, fall within Title VII's definition of employer." *See Passananti v. Cook Cty.*, 689 F.3d 655, 677 (7th Cir. 2012); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). Therefore, Allen-Noll's Title VII claim against individual defendants Daniels, Webb, Lausch, and Stoner will be dismissed.

### B. Entity Liability Under § 1981 and § 1983

In a brief argument, defendants also contend that Allen-Noll cannot state a claim against MATC or its board of directors under either § 1981 or § 1983 because she does not allege that the violation of these statutes resulted from a college policy, custom, or practice as required

under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). However, *Monell* involves claims against municipalities and other units of local government. It is not applicable to claims against state entities like MATC. *Id.* Therefore, defendants' motion to dismiss MATC and its board of directors on this ground is denied.

However, both sides fail to recognize that only "persons" are subject to suit under § 1983. Thus, Allen-Noll's constitutional claims against MATC and its Board must be dismissed. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Fritz*, 907 F.3d at 531. In contrast, because § 1981 does not require that a plaintiff be aggrieved by a "person" acting under the color of state law, that claim against MATC and the board may stand.

### C. Personal Involvement by Individual Defendants

Defendants correctly point out that an individual cannot be held liable under § 1981 or § 1983 unless he or she personally caused or participated in the alleged violation. *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (defendant cannot be held liable under § 1983 unless he was personally involved in alleged conduct); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (personal involvement requirement applies to §§ 1981 and 1983 claims); *Odogba v. Wisconsin Dep't of Justice*, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014). Therefore, to state a claim under either statute, Allen-Noll must connect the individual defendants with an alleged violation. *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful").

### 1. § 1981 and Equal Protection Claims

Allen-Noll alleges that defendant Lausch personally participated in or at least knowingly condoned the alleged racial harassment, discrimination, and retaliation that form the basis of her § 1981 and equal protection claims. However, the amended complaint includes very few allegations about the other individual defendants. Allen-Noll does not identify any actions taken by Daniels or Stoner; in fact, she does not even mention these defendants in the body of her amended complaint. As to Provost Webb, Allen-Noll alleges only that he accepted Lausch's recommendation not to renew Allen-Noll's contract before the matter was taken to the board for a hearing and vote.

In her brief, Allen-Noll states that the individual defendants "were strategically positioned to stop the discrimination which deprived Ms. Allen of her contract, but did not do so." However, administrators like Webb, Stoner, and Daniels cannot be found liable for damages on the basis of *respondeat superior* or other forms of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 675-77 (2009); *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); *Collegians for a Constructive Tomorrow-Madison v. Regents of Univ. of Wisconsin Sys.*, 820 F. Supp. 2d 932, 948 (W.D. Wis. 2011). A suggestion to the effect that any public employee who knows (or should know) about a wrong must do something to fix it is not a correct statement of the law. Pursuant to *Monell*, public employees are responsible for their own misdeeds but not for anyone else's. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Allen-Noll seems to suggest that Daniels, Webb, and Stoner knew that she had complained about discrimination, harassment, and retaliation, but without more, there is no basis to infer that these individuals had any personal

involvement in the alleged wrongdoing. Accordingly, Allen-Noll's § 1981 and equal protection claims against defendants Daniels, Webb, and Stoner will be dismissed.

### 2. Due Process Claim

There are no allegations in the amended complaint linking either Webb or Daniels to the board's decision not to renew Allen-Noll's contract or to the notice and hearing that she was provided in advance of that decision. On the other hand, because Stoner is identified as the chair of the board, and the board held the hearing at which Allen-Noll was terminated, I can infer at this stage that Stoner participated in both the hearing that was the board's decision not to renew Allen-Noll's contract. Further, Allen-Noll's allegations that Lausch orchestrated the decision made by the board and manipulated the notice and hearing that Allen-Noll received are sufficient to state a procedural due process claim against him.

## VI. Preemption of State Law Claims

Defendants contend that Allen-Noll's state law defamation claim is preempted by the Workers' Compensation Act, which Wisconsin has held provides the exclusive remedy for injuries arising out of her employment, including defamation that occurs at the hands of supervisors and co-workers before the employee is terminated. *Anderson v. Hebert*, 2011 WI App 56, ¶ 11, 332 Wis. 2d 432, 439, 798 N.W.2d 275, 278; *Wolf v. F & M Banks*, 193 Wis. 2d 439, 455, 534 N.W.2d 877, 883 (Ct. App. 1995). In addition, defendants argue that Allen-Noll's wrongful discharge and retaliation claims are preempted by the Wisconsin Fair Employment Act. *Bourque v. Wausau Hosp. Ctr.*, 145 Wis. 2d 589, 596, 427 N.W.2d 433, 436 (Ct. App. 1988)

(WFEA precludes all common law causes of action not "separate and distinct from the conduct prohibited by the WFEA"); *see also Thoms v. Berbee Info. Networks, Inc.*, 2006 WL 1993549, at *2 (E.D. Wis. July 13, 2006) (finding same).

Defendants' legal analysis is correct on both counts. Although Allen-Noll had two opportunities to address these arguments–once in response to defendants' motion to dismiss her initial complaint and again in response to their renewed motion to dismiss her amended complaint–she has failed to do so. This waives her arguments in opposition to preemption. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n. 1, 721 (7th Cir. 2011) (forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss]-as the [plaintiffs] have done here-results in waiver."). Accordingly, Allen-Noll's state law claims will be dismissed.


## VIII. Conclusion

By way of recapitulation, I am granting defendants' motion to dismiss all of the claims against defendants Webb and Daniels because they cannot be sued under Title VII and Allen-Noll has failed to allege that they were personally involved in any alleged wrongdoing.

Also, I am granting defendants' motion to dismiss Allen-Noll's Title VII claim against Lausch and Stoner; her equal protection claims against MATC, the board, and Stoner; her due process claims against MATC and the board; and all of her state law tort claims.

I am denying defendants' motion to dismiss Allen-Noll's Title VII claim against MATC and the board; her § 1981 claims against MATC, the board, and Lausch; her equal protection claim against Lausch; and her due process claims against Stoner and Lausch.

**ORDER**

IT IS ORDERED that the motion to dismiss, dkt. 16, filed by defendants Madison Area

Technical College, Board of Madison Area Technical College, Mark Lausch, Jack Daniels,

Terrance Webb, and Carolyn Stoner is GRANTED in part and DENIED in part:

(1)     Plaintiff's Title VII claims against defendants Lausch, Webb, Daniels, and
        Stoner are DISMISSED.

(2)     Plaintiff's § 1981 claims against defendants Webb, Daniels, and Stoner
        are DISMISSED.

(3)     Plaintiff's equal protection claims against defendants MATC, Board of
        MATC, Webb, Daniels, and Stoner are DISMISSED.

(4)     Plaintiff's due process claims against defendants MATC, Board of MATC,
        Webb, and Daniels are DISMISSED.

(5)     Plaintiff's state law defamation, breach of contract, and wrongful
        discharge claims are DISMISSED as to all defendants.

(6)     Daniels and Webb are DISMISSED as defendants in this case.

(7)     Defendants' motion is DENIED in all other respects.

Entered this 28th day of December, 2018.

                                        BY THE COURT:

                                        /s/
                                        _____

                                        STEPHEN L. CROCKER
                                        Magistrate Judge