IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAYSHEEDRA D. ALLEN-NOLL,

                Plaintiff,

     v.

MADISON AREA TECHNICAL COLLEGE, *et al.*,

                Defendants.

ORDER

18-cv-216-slc

---

On March 15, 2019, plaintiff Taysheedra D. Allen-Noll filed a motion to compel discovery (dkts. 31-33) and defendants filed a motion for summary judgment (dkts. 35-43). The court has suspended briefing on the summary judgment motion until it rules on the motion to compel. *See* dkt. 47.

Allen-Noll seeks to depose defendant Mark Lausch and seeks more detailed responses to Interrogatories 9, 12, 13, 14, 15 and 16, and requests for production (RFPs) 3, 6, 7, 15, 16 17, 18 and 19. *See* Brief in Support, dkt. 32. On March 22, 2019, defendants responded in opposition, resisting a second deposition of Lausch (who was deposed during proceedings before Wisconsin's Equal Rights Division) and asserting that they had adequately responded to all of Allen-Noll's discovery requests, . *See* Defendants' Brief in Opposition, dkt. 44. Given the nature and length of defendants' response, on Monday morning, March 25, 2019 the court provided Allen-Noll with a brief opportunity to reply (to March 27, 2019); Allen-Noll did not file a reply.

At least she didn't file a *timely* reply: on Saturday afternoon, April 6, 2019, Allen-Noll filed a two-page reply, claiming that due to "a strange computer glitch" her attorney did not receive defendants' March 22, 2019 opposition until Friday, April 5, 2019. *See* dkt. 48. That doesn't make any sense: electronically delivered documents don't just float in the ether for two weeks. Additionally, Allen-Noll's attorney would have received a notice from this court on

March 25, 2019 that the court had added the opportunity for a reply brief; that would have been the time to alert opposing counsel that Allen-Noll had not received the response. If that wasn't enough, this court entered a text-only order on March 26, 2019 (dkt. 47) denying Allen-Noll's Rule 56(d) motion and referring to Allen-Noll's March 27, 2019 reply deadline on her motion to compel. That was at least the second red flag to Allen-Noll that defendants had filed a response to which she had a chance to reply. Apparently, Attorney Coe did nothing, instead waiting passively until an electronic copy of defendants' response showed up in his email on April 5, 2019. This is a puzzling and perilous approach to briefing. Even so, because the court had not yet issued this order, I have Allen-Noll's reply and will address at the end of this order.

Having considered both sides' submissions, I am denying plaintiff's motion. Notwithstanding the heat of her rhetoric, Allen-Noll has not established any discovery failures by the defendants and the court has not discerned any in its broad review of the record currently before the court.

As a starting premise, the district court has broad discretion over pretrial discovery rulings. *Thermal Design, Inc. v. American Society of Heating, Refrigerating and Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). Second, before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it; that said and third, the court must limit the frequency or extent of discovery otherwise allowed if the discovery sought is unreasonably cumulative or duplicative. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Fourth, when a party has provided the information sought by its opponent in one set of documents, it is not

obliged to provide it again in a second set of documents. *Bell v. Taylor*, 827 F.3d 699, 711 (7th Cir. 2016).

Turning to the discovery motion actually before this court, Allen-Noll's brief in support is terse to the point of being inscrutable. This is another perilous litigation strategy. *See Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority . . . It is not the obligation of the court to research and construct the legal arguments open to parties, especially when they are represented by counsel"). But rather than simply deny Allen-Noll's motion outright, I have spent additional time reviewing the record in order to discern the nature and scope of the myriad discovery disputes and then decide each of them on its merits. This has led to the conclusion that Allen-Noll is not entitled to the relief she is seeking.

By way of narrative background, Allen-Noll alleges in her Amended Complaint (dkt. 14) that, as the only African American instructor on MATC's[1] nursing faculty, she was subjected to a racially hostile work environment as part of a conspiracy by administrators and co-workers to render her ineffective and to cause her to be fired because was an African American/Black woman. *See* dkt. 14 at 1-5.

Allen Noll began working at MATC part-time in 2009, then was hired full time. Allen-Noll filed her first complaint with ERD in December 2013 while still employed at MATC. Allen Noll filed a second complaint in July 2014, after MATC's Board declined to renew her contract. Allen-Noll cross-filed both of her ERD complaints with the EEOC. Allen-Noll alleged that she

---

[1] MATC has been renamed Madison College and defendants refer to the institution by that name. For the sake of continuity, the court will stick with MATC in this order.

had been discriminated against because of her color, because she opposed discrimination in the workplace, and because she had filed her first ERD complaint. In January 2016, the ERD provided initial probable cause determinations that the complaints could proceed. Attorney Mary Kennelly of Fox & Fox S.C. appeared on behalf of Allen-Noll. As part of the ERD proceedings, Allen-Noll, by counsel, deposed ten witnesses: Mark Lausch, Tracy Ahern, Kerry Kliminski, Brenda Thomas, LaKendra Adesuyi, Delisa Scott, Shawn Pfaff, Joel Winn and two former students. Defendants deposed Allen-Noll. "Multiple rounds" of written discovery were exchanged, including defendants' production of thousands of documents, emails, policies and voice mail messages. The ERD changed one finding to "no probable cause."

Prior to a hearing on that finding in 2017, Allen-Noll and Attorney Kennelly parted ways. Allen-Noll retained Attorney Rocky Coe, withdrew her ERD complaints, obtained her right to sue letters, then filed this lawsuit. Discovery began on July 6, 2018 following the preliminary pretrial conference.

In response to Allen-Noll's discovery requests, defendants provided 486 documents totaling over 4700 pages. In November, 2018, the attorneys exchanged communications regarding defendants' discovery. On November 16, 2018, Allen-Noll, by counsel, labeled defendants' disclosures as "abject noncompliance with proper discovery format" claiming that it was "beyond even reasonable speculation" for him to try to align defendants' documents to his discovery requests. *See* November 16, 2018 letter, dkt. 45-8. Although defendants disputed this characterization at the time and believed that counsel had not diligently inspected the discovery they already had provided, they nonetheless emailed Attorney Coe a spreadsheet on

December 3, 2018 that *did* line up their documents with his discovery requests. *See* December 3, 2018 email, dkt. 45-9; spreadsheet, dkt. 45-11 at 31-42.

Apparently the parties did not communicate about discovery for the next 10 weeks. Then on February 10, 2019, Attorney Coe emailed a letter to defendants' attorneys asserting that defendants had provided inadequate responses to Allen-Noll's Interrogatories 3, 9, 12, 13, 15, 16, 17, 18, 19 and 20, and RFPs 1-3 and 5-19. In his letter, Attorney Coe also objected to

> all of Respondents' production of documents that were dumped at one time (about 700 pages) . . . on a computer disc without any identification as to what document applied to what Request or what documents were not produced on the basis of a failure to identify an applicable privilege.

> *Id.* at 2.

Attorney Coe did not refer to the spread sheet provided to him on December 3, 2018. Attorney Coe warned that in the absence of compliance, he would be filing a motion to compel, "hopefully sometime this week." *See* dkt. 45-10 at 2-4.

On February 14, 2019, defendants responded in a nine-page letter with 30 pages of attachments in which they responded to each of Allen-Noll's assertions of a deficiency. Dkt. 45-11. Defendants told Attorney Coe that they actually had provided 4,767 pages of discovery, first on a zip file, then on a disk at Attorney Coe's request, followed by providing an Excel spread sheet that lined up defendants' documents to Allen-Noll's discovery requests. In response to Attorney Coe's claim that defendants "failed . . .to identify a protective order of any documents [*sic*]" defendants stated that they had emailed a proposed protective order to Attorney Coe on November 7, 2018 (*see* dkt. 45-11 at 21-28), but he had never responded.

On February 19, 2019, Attorney Coe sent a signed copy of the proposed protective order to defendants, who reformatted it and filed it with the court on February 21, 2019. *See* dkt. 22.

On February 28, 2019, Attorney Coe sent a letter to defendants' attorneys that begins:

> Based on your cantankerous letter . . . it is clear that Defendants are about to fall off the edge of civility in order to blame Plaintiff for the confusion caused by Defendants procedural ineptitude of its piece mill discovery responses. Indeed, your document correlation to the discovery requests should never have been delivered separated by letter and dumpster. And, because Plaintiff *did* read your initial responses, your second attempt is more of the same, a failed guttural obfuscation of the truth.
>
> Before Plaintiff files her motion to compel, I would like to meet with you sooner than later next week at your time of convenience, Madison or Milwaukee, to make a final try at getting descent discovery.
>
> Dkt. 45-12, all *sic.*

Attorney Coe took issue with defendants' responses to Interrogatories, 3, 9, 12, 13, 14, 15, and 16, and Interrogatories 1-3, 6, 7, 15, 16, 17, 18 and 19. *Id.* A telephonic meet-and-confer followed on March 5, 2019. Defendants' attorneys agreed to make Carolyn Stoner and Dave Miller available for deposition but refused to make Lausch sit for a second deposition unless Allen-Noll could identify some new topic or subject matter that was not at issue when Lausch was deposed during the ERD proceeding. Defendants declined to provide the personnel files of three of Allen-Noll's former co-workers because they were not persuaded by Allen-Noll's claims of relevance. Defendants agreed to provide some documents related to other full-time faculty, pursuant to the protective order. These documents had been produced to Allen-Noll during the ERD proceeding.

On March 15, 2019, Allen-Noll filed her motion to compel discovery, accompanied by her brief in support and the affidavit of Attorney Coe. *See* dkts. 31-33.

I will consider each of Allen-Noll's requests and defendants' responses, sometimes in groups. A copy of Allen-Noll's discovery demands and defendants' responses to them are contained in dkt. 45-2.

**Interrogatory No. 9:** This interrogatory asks what evidence defendants possess regarding Allen-Noll's performance, including but not limited to seven listed issues and the how, when, and from-whom defendants learned of each of these issues. The defendants made general objections[2] and specific objections, particularly to the characterizations and the statements within quotation marks presented in Int. 9. Defendants then provided six bullet-pointed reasons why they did not renew Allen-Noll's contract, and stated that these deficiencies "were communicated by students, peers and other staff of Madison College to Dean Lausch," who then presented them to his supervisors and the Board of Directors.

In her motion to compel, Allen-Noll contends that defendants have not answered the "who" and "when" questions, particularly regarding allegations that Allen-Noll was "doctoring grades" and "the St. Marys complaint of Spring 2011." Allen-Noll does not explain what the 2011 St. Marys' complaint is or what the basis is for the "doctoring grades" quotation. I have uncovered references to "the St. Mary's incident" in my self-guided review of documents cited

---

[2] Allen-Noll implies that she takes issue with these general objections, *see* dkt. 32 at 4 and 5, but F.R.Civ. Pro. 33(b)(3) states that the grounds for objection to an interrogatory must be timely stated or they are waived. So long as defendants followed their objections with a substantive answer, this is neither unusual nor a cause for concern.

by defendants. *See, e.g.,* dkt. 37-2. I still am not sure what Allen-Noll is referring to with the "doctoring grades" allegations.

Defendants respond that they have provided Allen-Noll and her attorney(s) with everything they have on this question and that the details are contained in Lausch's May 14, 2014 written submission to the Board, which he also provided to Allen-Noll on that same date. This 79-page document has been docketed as dkt. 45-15. Defendants also respond that Lausch was deposed during the ERD proceeding and that most of his testimony related to why Allen-Noll was not renewed.

I have reviewed dkt. 45-15. It provides pages of witness names, dates and reasons. I have reviewed the transcript of Lausch's September 7, 2016 5 ½ hour deposition, in which Lausch provides the same types of information in response to questions by Allen-Noll's attorney at that time. Attorney Kennelly adjourned the deposition by announcing the she did not have any other questions. *See* dkt. 26 at 39. From this review of the record, I cannot discern any evidentiary basis for Allen-Noll's terse contentions of inadequate disclosures by defendants.

**Interrogatory 12:** In this interrogatory, Allen-Noll asks for the event, date of the event and subsequent response, if any, by PN staff Di Polly to an African American student questioning whether Polly's failure to send the student a February 23, 2011 email was because of the student's skin color. Defendants responded that they believed the underlying incident was a February 17, 2011 argument or physical altercation between students, and that Polly forwarded the email from the student to MATC administrators VilaCruz, Crabbs and Lausch.

In her motion to compel, Allen-Noll claims that defendants have failed and refused to answer what was the specific event that caused the email, namely:

(I.e., Black student support for Plaintiff v. white students trying to get Plaintiff fired), who were the students involved, what specifically the student was referring to and whether it involved her skin color, what was the argument about (i.e., Plaintiff Ms. Allen-Noll?), who was present and what was the physical altercation (i.e. Was it White versus Black students involved in the physical altercation, and who was eventually removed by security).

Dkt. 32 at 5.

In their response to this argument defendants incorporated their responses to **RFPs 6 and 7**, which ask for all rules and regulations regarding the removal of students and others from the premises by MATC security, and documents involving any such removal. In her motion, Allen-Noll asks for more information regarding **RFP 6** by stating:

Involves removal of the Black student who supported Plaintiff and for comparison, why any other person in the altercation was removed or not removed from MATC premises and Dean Lausch was present during the happening of the event, but Defendants refuse to voluntarily allow Dean Lausch to be deposed.

Dkt. 32 at 8.

In support of **RFP 7**, Allen-Noll says that her Amended complaint identified "anti-plaintiff Ms. Ahern as the person who caused security to remove the pro-plaintiff student." Id.

Defendants assert that "Allen-Noll is fixated on the minute details of a February 2011 "security incident" that she already admitted had nothing to do with her or her class and she didn't know why security personnel showed up at her class. Dkt. 44 at 12, citing Allen-Noll August 25, 2016 deposition, dkt. 24 at 34 (deposition pages 130-131). Defendants also point out that Allen-Noll has deposed the student who was removed from her class.

On this record, Allen-Noll has not fleshed out any facts or argument that would suggest that this court should compel defendants to provide any additional information about it. Allen-

Noll's off-handed reference to Lausch being present for the event (which is not anchored to any document in the court file) as a basis to require him to sit for another deposition is a non sequitur in this context; even if the court considers this reference on its merits, it does not make additional details about this 2011 incident relevant to this lawsuit.

**Interrogatory 13:** Allen-Noll asks what Lausch did to Ms. Ahern (referenced in Int. 11) after he learned that she was involved in the February 2011 security incident that caused an African American student who supported Allen-Noll to be removed from MATC premises. Defendants responded that Dean Lausch "sought to understand the facts of the event and why security was necessary." Dkt. 45-2 at 15.

In her motion, Allen-Noll contends that defendants have

> failed and refused to answer what, if anything, did Dean Lausch do, what were the facts of the event, such as whether any Caucasian students were removed by security and why was security necessary. If Defendants caused no white students to be removed by security, it should state, and if Defendants did nothing to Ms. Ahern, it should so state nothing.

> Dkt. 32 at 6.

As a starting point, Allen-Noll's argument does not match the interrogatory: The interrogatory asks what Lausch did. The argument in the motion to compel demands an explanation of the background facts of the referenced event along with an explanation why events unfolded as they did. In any event, defendants have responded to the motion by stating that their terse answer is all that Dean Lausch did, so they have nothing to add. From the court's perspective, this is a sufficient answer to the interrogatory that Allen-Noll actually posed.

At this juncture in their response, defendants fold in their answer to Allen-Noll's **RFP 15** which asks for any and all documents from January 1, 2009 to January 1, 2015 showing

10

directives and or discipline to MATC staff "designed to stop: 'inappropriate discussions of their opinions of Plaintiff with students and advice to students regarding Plaintiff in an incorrect manner.'" In their interrogatory responses, defendants did not provide a substantive answer to this question, claiming that the terms used were vague and the quoted phrase did not refer to a speaker or document. In her motion to compel, Allen Noll labels this response "egregiously and blatantly incorrect" because Allen Noll references it in ¶ 29 of her Amended Complaint. Allen-Noll provides no further explanation or argument. The reference in the Amended Complaint apparently is to a June 1, 2011 memo by Dave Miller, an HR employee at MATC. Defendants respond that in the absence of clarification of this request, they cannot provide any specific documents, but that they already have provided documents and deposition testimony explaining how MATC responded to Allen-Noll's allegations that her colleagues were speaking ill of her to student and other staff. Defendants cite to dkts. 26 (Lausch deposition transcript) 37 (declaration of David Miller and 4 exhibits, including Miller's June 1, 2011 memo to Allen-Noll) and 40 (declaration of Lausch and 14 exhibits).

The court cannot discern from Allen-Noll's motion to compel what else she is seeking or what else she thinks is out there that defendants have not provided in response to Interrogatory 13 and RFP 15.

**Interrogatory 14:** This is Interrogatory 14, verbatim:

> After Plaintiff filed an internal harassment/racial discrimination complaint in May of 2011 and Dean Lausch thought in the Fall of 2011 *that despite Plaintiff doing a "great job" in class, Plaintiff's Black race was a reason why the P.N. faculty (white) did not like her*, why did Dave Miller of Human Resources (HR) and he, subsequently decide they had to find a way to non-renew her contract?

11

Dkt. 45-2 at 12; Allen-Noll added the emphasis in her motion to compel, *see* dkt. 32 at 6.

Defendants objected to this interrogatory "as improper and oppressive as it assumes facts that are either in dispute or demonstrably false." *Id.*

In her motion to compel, Allen-Noll simply states that defendants "failed and refused to answer while not denying the allegations, but vacuously contended and without any explanation that these allegations are improper, oppressive and assumes incorrect factual premises and argument." Dkt. 32 at 6. That's it. In their response to the motion to compel more information regarding interrogatory 14, defendants incorporate **Interrogatory 15 and RFP 17**.

This is Interrogatory 15:

> As of February 28, 2011, was Dean Lausch so intent on non-renewing the contract of Plaintiff that Mr. Miller of HR had to inform him that there was not enough AT THIS TIME to consider non-renewal but they would be building a case against Plaintiff?
>
> Dkt. 45-2 at 12 (on the document), caps in original.

Defendants declined to answer this interrogatory for the same reasons they declined to answer No. 14. This is RFP 17:

> Any and all documents and information showing the efforts of the PN nursing staff to gather negative information about Plaintiff, including but not limited to singular and/or joint efforts with Dean Lausch and the activity date of the efforts and what if any submission of the materials by anyone to Dave Miller of Human Resources including the submissions in consideration of non-renewal of Plaintiff's contract that by memo dated February 28, 2012, evoked the response from Mr. Miller "that those things would not be enough for us to consider non-renewal AT THIS TIME, but as part of building on, would be something to work with."
>
> Dkt. 45-2 at 22 (on the document).

Defendants declined to answer this RFP for the same reasons they declined to answer interrogatories 14 and 15. In her motion to compel, Allen-Noll simply points out that defendants refused to answer Interrogatory 15; she implies in a rhetorical question that Lausch was, in 2011 intent on non-renewing Allen-Noll. For her argument in support of RFP 17, Allen-Noll simply cites to and synopsizes the allegations in her amended complaint (dkt. 14) at ¶¶ 17, 29, 32, 34, 36, 39, 40, 42, 52, 53, 56 and 61. *See* dkt. 32 at 10-11.

In their response to the motion to compel, defendants assert that these three discovery requests are premised on Allen-Noll's conspiracy theory, which they dispute and label as "demonstrably false." Defendants contend that they have provided the evidence why Allen-Noll's contract was not renewed;[3] "whether this evidence fits neatly into Allen-Noll's conspiracy narrative has no bearing on Defendants' discovery obligations in this case." Dkt. 44 at 10.

Defendants are correct. Interrogatories 14 and 15 are rhetorical questions framed as discovery requests. RFP 17 is closer to a legitimate request, but it is couched in terms of Allen-Noll's conspiracy theory, which defendants hotly dispute. Allen-Noll is entitled to all of the evidence in defendants' possession about defendants' investigation of her and their decision not to renew her contract. Defendants assert that they have done so. Allen-Noll has not presented any evidence or argument that this is not so; instead, she points out to the court that the defendants have refused to answer these particular discovery requests despite her allegations that there really *was* a racially-motivated conspiracy to cause her to be non-renewed. That's all self-

---

[3] Defendants list "days of deposition testimony, . . . a list of reasons her contract was non-renewed, . . . copies of her PIPs, the information packet Dean Lausch presented to the Board at her non-renewal hearing, her non-renewal consideration notice, minutes from the non-renewal hearing, and the letter providing her notice of non-renewal." Dkt. 44 at 10.

evident; under the circumstances, it also is a non-sequitur. Allen-Noll has made her view of what happened and why abundantly clear in her amended complaint. The defendants have categorically denied every material allegation against them and have disclosed all the evidence they have as to their stated reasons for non-renewing Allen-Noll. Defendants are not required to acquiesce in Allen-Noll's theory of prosecution when responding to her discovery requests. As long as they have provided the relevant information in their possession, they have met their discovery obligations and there is nothing for the court to compel.

**Interrogatory 16:** Allen-Noll asks for the details of any discipline she ever received during her employment at MATC. Defendants responded that Allen-Noll's "performance deficiencies" were summarized in three PIPs and in the packet of information Lausch provided to the Board on May 14, 2014.

In her motion to compel, Allen-Noll complains that defendants have refused to say whether a PIP is considered discipline, or whether she was ever disciplined. Defendants respond that "To be clear, Defendants' position is not that a PIP is a form of discipline. Defendants simply pointed Allen-Noll to the myriad of performance issues in the event this was yet another request aimed at the reasons for her non-renewal." Dkt. 44 at 7. This time, it was defendants' response to the interrogatory that was unclear, but they clarified it in their response to the motion to compel: MATC never disciplined Allen-Noll because a PIP is not a form of discipline. There is nothing left for the court to order.

**RFP 3:** Plaintiff has asked for the personnel files of Tracy Ahern, Di Polly and Teri Gorder, including but not limited to all disciplinary actions, complaints, appraisals, evaluations,

wage increases and bonuses during their employment.[4]  Defendants declined to provide any of these documents, claiming, among other things that they were irrelevant and disclosure would be an invasion of privacy "with respect to unfettered access to personnel files of non-party employees" of MATC.  Dkt. 45-2 at 16-17.  In her motion to compel, Allen-Noll states only that she wants these files "for ostensible comparison purposes to show how Plaintiff was treated." Dkt. 32 at 7.

As a starting point, courts have broad discretion to limit the disclosure of personal files, in order to prevent the dissemination of personal or confidential information about employees; courts should consider the totality of circumstances, weighing the value of the material sought against the burden of providing it, while taking into account society's interest in furthering the truth seeking function in the particular case before the court.  *Brunker v. Schwan's Home Service, Inc.* 583 F.3d 1004, 1010 (7th Cir. 2009).

But evidence regarding actual comparators–namely, similarly situated employees–is relevant and therefore discoverable.  In order to determine whether another employee is similarly situated to a plaintiff, courts ask whether the employee's situation was similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis.  In a case where the plaintiff alleges that her employer disciplined her more harshly than her comparator, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor, rather than job description and duties.  The critical

---

[4] In her motion to compel, Allen-Noll lists Lausch's personnel file as one she seeks in RFP 3.  This is incorrect.

question is whether the employees have engaged in conduct of comparable seriousness. Conduct may be comparably serious if it violates the same rule or is of a similar nature. *De Lima Silva v. Department of Corrections*, 917 F.3d 546, 559 (7th Cir. 2019). Allen-Noll has not made any attempt to make this showing for Ahern, Polly or Gorder.

Finally, defendants respond to the motion to compel by asserting that they *have* provided evidence of MATC's actual comparators to Allen-Noll: four full-time instructors who were supervised by Lausch and who had substantial performance issues. Defendants produced this information in 2016 for the ERD proceeding and again in this lawsuit after the protective order was entered. *See* dkt. 44 at 13.

In short, Allen-Noll has not made any showing that she is entitled to discovery of these personnel files. The evidence further shows that she doesn't need these files because they don't provide the information she appears to be seeking. This information is available in the files of the other employees, relevant portions of which defendants already have provided.

**RFPs 16 & 18:** In RFP 16, Allen-Noll seeks any and all documents showing internal harassment/ discrimination complaints filed by employees/persons at MATC from January 1, 2009 to January 1, 2015, including but not limited to the date they were filed, data complied regarding the allegations and the completion date of the investigation. Defendants responded that this request was overly broad, unduly burdensome, irrelevant and disproportionate to the needs of the case, because it sought any and all document including information unrelated to Allen-Noll's case and outside the statute of limitations. *See* dkt. 45-2 at 22.

In her motion to compel, this is Allen-Noll's argument regarding RFP 16:

> The purpose of this request is for comparison to how Plaintiff's complaints were treated. . . .[*defendants' response is a* ]Vacuous claim

16

that this is, *inter alia*, a burden without showing how many complaints or why this constitutes a burden and/or is beyond the statute of limitations.

Dkt. 32 at 9.

In RFP 18, Allen-Noll seeks any and all documents "showing complaints and/or concerns regarding the PN nursing program" from 2009 to January 1, 2015, including the name of the person filing the concern or filing a complaint against an instructor, and complaints filed by named staff regarding other named staff. In their response, defendants provided no information, objecting that this request was overly broad, unduly burdensome, irrelevant and disproportionate. *See* dkt. 45-2 at 22-23. In her motion to compel, this is Allen-Noll's argument regarding RFP 18:

> Ostensibly, this request was made for comparison purposes, but Defendants assert it is irrelevant to how Plaintiff was treated and if non-Plaintiff complaints generally permeated the program.

Dkt. 32 at 11.

In her motion, then, Allen-Noll seems to have recast RFPs 16 and 18 as requests for comparators. But that's not what either RFP actually demanded: both swept much more broadly, encompassing swaths of irrelevant information. To the extent that Allen-Noll actually is seeking similarly-situated employees, defendants have responded to those request, *see supra* at 16. Allen-Noll has provided no basis for the court to compel substantive answers to RFPs 16 or 18.

**RFP 19**: Allen-Noll asks for any and all documents showing the wage scale of PN nursing instructor staff, including starting wage, yearly increases, merit increases, bonuses, and any rules or regulations that could be used to deny a wage increase or bonus. Defendants responded that this information was irrelevant and the request was overly broad and unduly burdensome.

In her motion to compel, Allen-Noll states simply that this information is "needed for comparison to how Plaintiff was treated and valued or not valued wage wise." Dkt. 32 at 11. In their response, defendants see this as a request for information about the compensation of other faculty members and they argue that this would require the disclosure of confidential information that is irrelevant to Allen-Noll's claims.

Frankly, the court cannot discern what Allen-Noll is asking for. The actual RFP seems to ask for generic wage and bonus information, but Allen-Noll's motion to compel seems to recast this as a search for comparator information. Her one-sentence argument does not clarify the situation. I doubt that defendants object to providing generic wage and bonus information under seal, but it's not clear how that is relevant to Allen-Noll's claims. To the extent Allen Noll is seeking wage and bonus information regarding particular employees, she has not made any showing that these employees are similarly situated to her.

**Deposing defendant Lausch**

This is the heart of Allen-Noll's motion to compel, as confirmed by her reply brief. *See* dkt. 48 at 1. Allen-Noll does not reply specifically to any other of defendants' myriad arguments in their opposition to her motion to compel. Allen-Noll contends that she is entitled to a deposition of Rausch in this federal lawsuit because the ERD proceeding is not binding. In support of this proposition, Allen-Noll cites to the slip opinion in *Donley v. Stryker Sales Corp.*–the official cite is 906 F.3d 635 (7th Cir. 2018). This case does not help Allen-Noll. The issue in that case was plaintiff's appeal from the district court's grant of summary judgment to the defendant in her Title VII lawsuit. Allen-Noll contends that the court held–or perhaps

implied–that a plaintiff in a Title VII lawsuit may depose her employer's managerial witnesses both in the EEOC proceedings and in the subsequent federal lawsuit. This misinterprets both the facts and the law in *Donley*. The "EEOC statement" referred to in the language quoted by Allen-Noll was a written statement. *See* 906 F.3d at 636. When the plaintiff's supervisor–Jeff Thompson--was deposed during the federal lawsuit, he contradicted Stryker's written statement to the EEOC about when Thompson first had seen relevant photographs taken by plaintiff. In the language quoted by Allen-Noll, Stryker argued that the court should not view this as a dispute of material fact because the court should not allow its written statement to the EEOC to be admitted against it in plaintiff's subsequent federal lawsuit. The court of appeals disagreed:

> These considerations may affect the weight of the evidence, but they certainly do not authorize exclusion of an employer's EEOC response when offered as an admission of a party opponent.
>
> *Donley*, 906 F.3d at 638.

In other words, the court's holding in *Donley* directly contradicts the point that Allen-Noll is trying to make. Further, the manager in that case, Thompson, was only deposed once, not twice, as Allen-Noll is asking in her motion before this court.

A court may order a repeat deposition when the court finds an intentional effort to obfuscate and to impede a party's legitimate effort to obtain discovery. *See Banco Del Atlantico, S.A. v. Woods Industries, Inc.*, 519 F.3d 350, 352 (7th Cir. 2008). Conversely, a court may deny a motion to compel a deposition that would not aid in the exploration of a material issue. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002).

Here, defendants have consistently responded to Allen-Noll's request to re-depose Lausch by challenging her, through counsel, to point to any new, material issue that was not covered by Allen-Noll and Attorney Kennelly at Lausch's first deposition. *See* dkt. 44 at 16. In response—and in her motion to compel, dkt, 32 at 12-13—Allen-Noll simply reiterates her unchanging position throughout all proceedings in her challenge to her non-renewal: that Dean Lausch pretended to approve of Allen-Noll's job performance while secretly gathering information against her because of her race. Allen-Noll labels this as "different, unexplored and paramount key theories." *Id.* at 12.

I have reviewed the transcript of Lausch's September 7, 2016 deposition. Allen-Noll's first attorney questioned Lausch about the topics that are relevant to Allen-Noll's current federal lawsuit, including the stated grounds for her non-renewal, the subsequent hiring of four white instructors, the disciplinary treatment of the similarly situated employees, an earlier complaint of a different African American employee of how she was being treated, and complaints of students who thought their instructors had given them failing marks because of their race. Counsel reviewed 31 exhibits. My quick read did not reveal any references to a conspiracy and the word does not appear in the reporter's index. The absence of the word "conspiracy," however, is not a reason to compel a second deposition of Lausch when there is no showing of any specific substantive gaps in the questions and answers. Deposing Lausch again with an eye toward proving up a hidden racial conspiracy would simply cover the same facts a second time, with Lausch denying the existence of any such conspiracy. The fact that Attorney Coe might approach deposing Lausch differently than Attorney Kennelly did is not a reason to make Lausch sit for a second deposition. Pursuant to Rule 37(a)(5)(B), this is a circumstance under Rule

26(c) in which Lausch is entitled be spared from another deposition due to annoyance, undue burden and undue expense, all of which would be disproportionate to the cost in time, effort and money of attempting to adduce any new, relevant information.

This is the bottom line: despite the number of discovery requests flagged by Allen-Noll in her motion, her factual presentation and legal arguments were perfunctory. The court took it upon itself to double-check the record but still found no basis to order the requested discovery.

In their response, defendants asked for cost-shifting in their favor pursuant to Rule 37(a)(5)(B). The rule provides for no-fault cost-shifting: "The great operative principle of Rule 37(a) is that the loser pays." *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994). Right now, the court is more concerned about getting summary judgment under advisal. Not later than May 15, 2019, defendants may submit an itemized bill of costs, with Allen-Noll's response in opposition due not later than May 31, 2019.

A closing note on decorum: "apophasis" is a rhetorical device in which the writer brings up a subject by either denying it, or denying that it should be brought up. In his reply brief, Attorney Coe closes by proclaiming that:

> Plaintiff refuses to engage Defendants in an uncivil, scurrilous, extortionist and offense diatribe, that Plaintiff is engaging in unethical tactics by using a meritless case to drag it to the settlement table. (Op. Bf p. 17 § C). Plaintiff is seeking to comply with procedures and is confident Plaintiff will prevail if Defendants' ceases sanctionable obfuscating conduct.

> Dkt. 48 at 2, all *sic*.

The court takes no position on the merits of this lawsuit, which are not before the court today, and it takes no position on settlement, which is a matter from which all judges in this court wall

themselves off.  But the only side tossing around accusations and invectives is plaintiff's.  A reminder:

> Flippant, unfounded accusations of misconduct and fraud by opposing counsel . . . demean the profession and impair the orderly operation of the judicial system.  They also violate the ethical standards for lawyers practicing in this circuit.  We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

*In the Matter of: Steven Robert Lisse,* ___ F.3d ___, ___ WL ___, Case Nos. 18-1866 & 18-1889 (7th Cir. April 1, 2019),Slip op. at 25.  *Id.*, quoting 7th Cir. Standards for Prof. Conduct, *Lawyers Duties to Other Counsel* at ¶ 4.

## ORDER

IT IS ORDERED that:

(1) Plaintiff's motion to compel discovery (dkt. 31) is DENIED in its entirety.

(2) Plaintiff's deadline to file her complete response to defendants' motion for summary judgment is April 30, 2019, with defendants' complete reply due by May 10, 2019.  The court does not intend to extend these deadlines.

(3) Defendants' deadline to submit a Rule 37(a) bill of costs is May 15, 2019, with plaintiff's reply due by May 31, 2019.

Entered this 8th day of April, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge