TAYSHEEDRA D. ALLEN-NOLL,

                    Plaintiff,

    v.

MADISON AREA TECHNICAL COLLEGE, *et al.*,

                    Defendants.

OPINION AND ORDER

18-cv-216-slc

In this civil action brought under federal and state law, plaintiff Taysheedra Allen-Noll alleges that she was harassed, subjected to different terms and conditions of employment, and fired from her position as a nursing instructor with defendant Madison Area Technical College (MATC) because of her race and because she complained about racial discrimination and harassment. Allen-Noll has brought claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against MATC and its board, a § 1981 claim against Mark Lausch, a procedural due process claim against Lausch and Carolyn Stoner, and an equal protection claim against Lausch. Before the court is defendants' motion for summary judgment. Dkt. 35. For the reasons stated below, I find that plaintiff has failed to produce sufficient evidence to establish the key elements of any of her claims. Therefore, I am granting defendants' motion.

## PRELIMINARY PROCEDURAL MATTER

Before I set forth the undisputed facts, a preliminary matter requires attention. Contrary to this court's summary judgment procedures attached to the pretrial conference order in this case, *see* dkt. 13, Allen-Noll did not provide a coherent or meaningful response to any of defendants' proposed findings of fact. Litigants are instructed to respond to a moving party's proposed findings of fact in separately numbered paragraphs and support their version of the

facts with citations to admissible evidence. Summ. Judg. Proc. §§ II.D and E. Allen-Noll failed to do this. Instead, she submitted a photocopy of defendants' proposed findings of fact with a few illegible notes, handwritten in the margins. Although Allen-Noll filed an undated affidavit setting forth her version of some of the events at issue in this case, dkt. 52, she did not file any proposed findings of fact of her own citing to her affidavit or any other admissible evidence.

At the beginning of her brief in opposition, plaintiff explains that "[b]ecause of time constraints Plaintiff has not been able to discuss adequately all her Disputes to Defendants' Proposed Findings of Facts. But, Plaintiff does incorporate all of he Disputes into her Declaration and Brief in Opposition to Summary Judgement." Dkt. 51 at 1. However, as the court warns parties in its summary judgment procedures, it "will not search the record for evidence. To support a proposed fact, you may use evidence as described in Procedure I.C.1. a. through f." Summ. Judg. Proc. § II.E.1. Therefore, in light of Allen-Noll's failure to comply with this court's summary judgment procedures and failure to cite admissible evidence to dispute defendants' proposed findings of fact, I have accepted most of defendants' proposed facts as undisputed. *Abraham v. Wash. Grp. Int'l, Inc.*, 766 F.3d 735, 737 (7th Cir. 2014) ("[T]his Circuit has routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions."); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630-31 (7th Cir. 2010) (holding that the district court did not err when it deemed the defendant's proposed findings of fact admitted and refused to consider additional facts for the plaintiff's failure to follow the local procedures on proposed findings of fact).

## UNDISPUTED FACTS

I find the following facts to be material and undisputed:

### I. Background and the Parties

Plaintiff Taysheedra Allen-Noll resides in Deforest, Wisconsin. Defendant Madison Area Technical College (MATC) is a technical college created under Wis. Stat. Ch. 38 and located in Madison, Wisconsin. It is governed by defendant Board of Madison Area Technical College. Defendant Mark Lausch is the Associate Vice President of MATC. From March 2009 to July 2018, he was the Dean of the Center for Health and Safety Education and Allen-Noll's immediate supervisor. Defendant Carolyn Stoner was a member of the board from July 1, 2005 to June 30, 2016, and she served as its chair from July 1, 2013 to June 30, 2015.

Allen-Noll was first employed by MATC as a part-time nursing instructor in the Certified Nursing Assistant Program in January 2009. In December 2009, MATC hired her as a full-time instructor on an emergency basis. In 2010, MATC promoted Allen-Noll to Instructor–Practical Nursing.

### II. Performance Issues

#### A. Spring 2010

In May 2010, a group of students approached the administration to complain that Allen-Noll was "rude, condescending and defensive" in the classroom. They explained that Allen-Noll would not return calls or respond to student emails. After the initial complaint, one student stated that she did not agree with the group's statements regarding Allen-Noll's behavior and that she thought Allen-Noll was professional, funny, and worked to help students succeed.

3

Faced with conflicting information, MATC did not take any formal action with respect to the students' complaints.

**B. Spring 2011**

Faculty member Teri Gorder was Allen-Noll's assigned mentor. On or about February 17, 2011, Lausch spoke to Gorder's Fundamentals of Nursing class about issues they were having with Allen-Noll in her pharmacology course, because he had received complaints from a number of students. Almost everyone in the class spoke up about issues they were having with Allen-Noll's presentation, including her assignments, and the way she taught the pharmacology course, as well the fact that most of the class had failed a test and Allen-Noll would not review tests with them.

The next day, MATC security removed a student from Allen-Noll's classroom because of an incident that occurred between this student and some of her fellow classmates the night before. (Faculty member Tracy Ahern had called security because she witnessed an incident the night before in which a student became aggressive toward her classmates. Ahern had left a voicemail for Allen-Noll, letting her know that security would be at her classroom the next morning to remove the aggressive student.) Lausch informed Allen-Noll about the student complaints in an email on February 20, 2011 and spoke with her over the phone on February 21, 2011.

Ahern also contacted Lausch about multiple student complaints coming from Allen-Noll's pharmacology class. Ahern advised students that after they spoke with Allen-Noll directly, they could go to the dean and voice their complaints about the class. Ahern eventually went to

Lausch on the students' behalf.  On March 17, 2011, Lausch again emailed Allen-Noll to talk to her about student complaints related to her pharmacology class and stated that he was preparing information to discuss with students in anticipation that those who failed her course would file grade disputes.  In the email, Lausch stated that he wanted to speak with Allen-Noll about anything that could be done to improve "the interpersonal 'stuff' with the other P.N. faculty."  Recognizing that certain individuals in the faculty group may not like Allen-Noll, he asked for Allen-Noll's thoughts on how to improve these relationships.  Lausch pointed out that Allen-Noll was not being singled out by him because he also had a similar conversation with others in the program and was planning on still talking to one or two more people.

During the spring 2011 semester, Allen-Noll was teaching a clinical class at the St. Mary's Hospital clinical site.  On April 5, 2011, Gorder emailed Lausch with concerns that the St. Mary's Hospital unit director, Barb Hauge, had expressed about Allen-Noll.  According to Gorder, Hauge had received numerous student complaints about Allen-Noll not being available to provide assistance or guidance.  Hauge also complained that Allen-Noll was not following rules related to cell phone usage and paperwork.  On May 10, 2011, Lausch spoke with Hauge, who stated that she did not want Allen-Noll to return.  The same day, Lausch informed Allen-Noll of Hauge's concerns and told her that she would be assigned to a different clinical site in the fall of 2011.

On May 18, 2011, Lausch emailed Allen-Noll to inform her that a tutor had stopped by his office to make a formal complaint about issues related to Allen-Noll's spring 2011 pharmacology class.  He asked Allen-Noll to follow up with him about the tutor's concerns, which included not posting grades or making study guides available in a timely manner, not

going over exams in class, and inappropriately allowing last-minute and unannounced extra credit to avoid having too many students fail the class.

### C. Fall 2011

In September 2011, faculty members Diana Polly and Gorder both told Dean Lausch that Allen-Noll was not participating in Practical Nursing team meetings fully, would not attend all meetings, and would not volunteer for extra service-related activities (which was expected of all full-time faculty members). On December 8, 2011, Allen-Noll left a voicemail for Lausch, telling him that she would not attend future meetings because she did not feel comfortable in the group unless he or the associate dean of nursing attended. Lausch made arrangements for one of them to attend the meetings with Allen-Noll.

In early October 2011, there was an email exchange between Lausch, Allen-Noll, and Gorder, in which Gorder claims she gave Allen-Noll a sealed envelope with student Background Information Disclosures for delivery, which Allen-Noll opened. Lausch pointed out that if this was true, it was a potential violation of the Family Education Rights and Privacy Act of 1974 (FERPA) that had to be documented. About a month later, Lausch told Allen-Noll that it appeared that there was a FERPA violation, but that he was not convinced that it was intentional. Allen-Noll responded by saying that she thought that she may have committed a violation.

On October 17, 2011, Lausch met with Kay Parish, Allen-Noll's new mentor, and learned that she had exchanged a few emails and voicemails with Allen-Noll but Allen-Noll had not yet met with Parish as she was supposed to do. Lausch also received reports from Ahern and Kerri

Kliminski that Allen-Noll was letting students out of her pharmacology class as much as an hour early, she was not responding to students who tried to contact her, she was unavailable during office hours, she was not providing a class syllabus, and she was not giving students review sheets or study guides.

On November 4, 2011, Lausch completed a "Faculty Professional Growth Review Administrative Assessment" for Allen-Noll after he observed her pharmacology class and noted that she "did a great job of connecting the points in this lecture with previous lectures and handouts" and did not note any areas in which she needed improvement.

### D.  Spring 2012

Allen-Noll was assigned to Waunakee Manor to teach a Lifespan Clinical course in the 2012 spring semester.  Lausch received several complaints from Allen-Noll's students, including that Allen-Noll repeatedly told them during the first four weeks of the semester that they were the worst class she ever had, that she had told at least two of her students within the first two weeks of class that they were going to fail, that she was not positive, she did a poor job actually teaching students the skills they were supposed to learn, and she played favorites amongst her students by writing up some students for insignificant or nonexistent issues but not writing other students up for more serious mistakes.  Lausch informed Allen-Noll of these various complaints on two separate occasions in the 2012 spring semester, but Allen-Noll denied all of the behavior and accused her colleagues of "hostile, over scrutinizing and undermining behavior," even though it was her students and not other instructors who had filed the complaints.  Lausch explained to Allen-Noll that the alleged comments were unacceptable and that he did not understand why

so many of her students were reporting these comments to him if she had not actually made them.

In March 2012, Allen-Noll was scheduled to proctor an essential academic skills exam but failed to show up in time to register the students. Kliminski had to leave the class she was teaching to check students in before the start time for the test. Lausch continued to receive complaints from students throughout March 2012. He alerted Dave Miller in human resources about his concerns and mentioned not renewing Allen-Noll's contract. Miller advised Lausch on the proper procedure for documenting his concerns, including clear identification of deficiencies, measurable outcomes sought, and offers of assistance from MATC. On March 21, 2012, Lausch sent Miller a draft of a performance improvement plan (PIP) for Allen-Noll.

### E. Allen-Noll's First PIP (Spring 2012)

On May 17, 2012, Lausch gave Allen-Noll a PIP that detailed her performance deficiencies and made clear that she could face disciplinary action and non-renewal of her contract. The PIP was separated into these four categories:

1) Instruction: Deficiencies included the student complaints discussed above and Allen-Noll's tendency to get off topic for long periods, spending the majority of her classes talking about her personal life (including her sex life); failing to post grades in a timely manner; lying about what was in the syllabus, PowerPoints, or on the Blackboard site; and not being accommodating when working with students with special needs. Measurable outcomes in this category included refraining from inappropriate communications with students, not letting

students out of class early, posting grades in a timely manner, grading consistently, and maintaining regular office hours.

2) Clinical: Deficiencies included Allen-Noll's behavior at her St. Mary's clinical assignment and her students being unprepared for their clinical rotations. Measurable outcomes included only being in the break room when on break, not using a cell phone while at the clinical site, ensuring students do the same, and communicating regularly and effectively with students during the clinical experience.

3) Peer Relations: Deficiencies included Allen-Noll's failure to remain in contact with her mentor, to communicate with colleagues in a professional or cordial manner, and to discuss and attempt to resolve issues with other faculty members. Measurable outcomes included attending all faculty meetings regardless of whether Lausch or the associate dean was present, communicating in a professional and cordial manner with colleagues, and having regular face-to-face discussions with her mentor.

4) General Expectations: The deficiency noted was Allen-Noll's unwillingness to take on additional activities that are expected of all full-time faculty, and the measurable outcome was taking on additional activities.

Allen-Noll admitted in her deposition testimony that most of the above measurable outcomes were reasonable expectations of a full-time faculty member at MATC. On May 29, 2012, Allen-Noll emailed a list of questions to Lausch, who responded on June 6, 2012. In addition to answering her questions, Lausch explained that despite the fact that he had given her one positive in-class observation, it was not representative of her overall performance and the pattern or trend of the same student complaints resurfacing presented a more compelling case

than a mere "he said/she said" situation and must be taken as valid absent other mitigating circumstances.  On June 13, 2012, Allen-Noll emailed a 163-page rebuttal in which she did not take any responsibility for the deficiencies noted in the PIP, shifted blame, and pointed out others' alleged performance issues.  In the rebuttal, Allen-Noll also acted as if once her performance issues were discussed, the matter was closed and she did not actually have to implement the measurable outcomes going forward.

### F.  Fall 2012

Allen-Noll taught two pharmacology and two clinical courses during the fall semester of 2012. Allen-Noll had multiple conversations with Lausch regarding the specific items in the PIP between May 17, 2012 and January 10,  2013, and Lausch continued to make efforts to address her concerns and assist in her success.  Even so, Allen-Noll failed to show improvement.

On October 5, 2012, Lausch emailed Allen-Noll another Faculty Professional Growth Review Administrative Assessment for an in-class observation of one of her pharmacology class days.  In the email, Lausch stated that he thought Allen-Noll "did [a] good job and [I] am not sure if we need to meet face-to-face regarding the observation."

On November 29, 2012, a student emailed Allen-Noll, claiming that some of her classmates were speaking negatively about Allen-Noll and her poor teaching of pharmacology. The student also stated that Dennis Faber, a part-time instructor, was speaking with students directly about how Allen-Noll was not allowed to teach the clinical course at St. Mary's Hospital and that he had to teach Allen-Noll's students about drugs and their interactions, which they should have learned in Allen-Noll's pharmacology course.  After Allen-Noll told Lausch about

the email, he emailed Faber, who responded that students consistently complained about Allen-Noll's pharmacology class but that he had not initiated or participated in these discussions. Lausch instructed Faber not to allow that sort of discussion in his classroom but instead to direct students to speak directly with Allen-Noll and, if necessary, with Lausch or the associate dean. Lausch also instructed the associate dean to avoid assigning Allen-Noll's students to Faber if possible.

### G. Second PIP (Fall 2012)

Because Allen-Noll did not demonstrate improvement on the measurable outcomes outlined in her first PIP, Lausch issued her a second or "recap" PIP on December 17, 2012. The second PIP repeated Allen-Noll's deficiencies in the same four categories as the first PIP and included a fifth category titled "Additional Concerns Since the Last Performance Improvement Plan." This new category highlighted student complaints: Allen-Noll read directly from her PowerPoints during class without any deviation and became defensive when asked why she suddenly stopped giving out study guides. The measurable outcomes for this new category required Allen-Noll to look for ways to make class more interactive and to clearly identify in the syllabus when and if study guides would be available along with her expectations for the use of such study guides. The PIP also contained a new "evaluation and status" column listing additional concerns received during the fall 2012 semester, including using inappropriate language in class (e.g., calling someone "retarded"), failing to grade and post assignments and tests in a consistent and timely manner, and not being available during posted office hours.

Allen-Noll was not aware of any conscious attempts that she made to meet any of the expectations and measurable outcomes identified in the second PIP.

### H.  2013

On March 8, 2013, Dean Lausch sent Allen-Noll a Faculty Professional Growth Review Administrative Assessment for an in-class observation of one of her pharmacology class days, stating "Well done!"  However, students complained that Allen-Noll was spending time in class talking about her personal life, sex life, about getting drunk and about trying to urinate in a toilet while standing up.  On October 23, 2013, Lausch met with students from Ahern's class to discuss any issues or concerns that they may have with Allen-Noll, in an attempt to make them more comfortable coming to him, if needed.

One of Allen-Noll's students from her fundamentals course withdrew from the nursing program in the 2013 fall semester at least in part because he felt belittled by Allen-Noll, describing her fundamentals class as a toxic environment that was not allowing him to learn.  In mid-November 2013, Allen-Noll failed to show up to administer a student's makeup test even though she knew the student had to go to work.  The makeup test had to be rescheduled and administered by a different staff member.  In another instance, a student had a scheduled meeting with Allen-Noll, but because the student was not in the hallway at the time that Allen-Noll opened the door, Allen-Noll chose not to meet with the student, even though the student was there early.

Allen-Noll also continued to have problems posting grades in a timely manner.  In late November 2013, she administered a test four days before the course withdrawal deadline, and

when asked by a student (and later Kliminski) when grades would be posted, she replied that she could not guarantee they would be posted in a timely manner. Because the majority of Allen-Noll's students were failing the course, this was a serious issue. Lausch directed Allen-Noll to post her grades the next day at 4 p.m., stressing that it was important to give students enough time to make a decision to withdraw from her course. Although Allen-Noll complied with the directive, she stated that she viewed his increased email correspondence as harassment and discrimination. Lausch responded by explaining that he was receiving an increased number of complaints from students and faculty. By this point in 2013, every permanent faculty member in the program at MATC—including Ahern, Gorder, Kliminski, and Polly—sought out Lausch to complain that Allen-Noll was an inappropriate and disruptive individual.

Allen-Noll requested a meeting with Lausch and Marie Dusio, the new president of the full-time faculty union. On December 2, 2013, Lausch, Dusio, and LaKendra Adesuyi, a human resources generalist, met with Allen-Noll to discuss her concerns. Lausch and Dusio explained that Allen-Noll was subject to more supervision than other instructors because she was on a PIP. After the meeting, Allen-Noll was sent an electronic link to MATC's harassment and discrimination form.

## I. Third PIP (Fall 2013)

On December 16, 2013, Allen-Noll received her third PIP, which included three categories needing improvement—instruction, peer relations, and general expectations—and identified the same areas of deficiency and measurable outcomes identified in the first and second PIPs because Allen-Noll had shown no improvement. This PIP also specified the types

of assistance that MATC could provide to Allen-Noll, including a requirement that Allen-Noll meet with her mentor, Kay Parish, the second and fourth week of every month to work on her professional development. It was MATC's standard practice to require faculty members on a PIP to check in with either the dean or his designee. Allen-Noll testified at her deposition that the PIP contained expectations that were reasonable for all full-time faculty members.

### J. Spring 2014

On February 11, 2014, Lausch met with Parish to see how her meeting went with Allen-Noll. According to Parish, the meetings were not going well because Allen-Noll gave only one-word answers to her questions and claimed to not understand why they were meeting. Parish also reported that Allen-Noll was arrogant and belligerent throughout the entire meeting, that she arrived six minutes late, emphasized repeatedly that she was no longer a probationary staff member, and at exactly the time that the 15-minute meeting was to end, said "Our time is up" and walked out the door.

On February 12, 2014, Lausch emailed Allen-Noll and Parish, stating that the two were "scheduled to meet the second and fourth week of every month through the semester to discuss any issues, challenges, or questions that the faculty member may have and any thoughts, observations or comments that the mentor may have that could assist the instructor in her role as a full-time faculty member." Lausch also stated that he wanted them to discuss the expectations of all full-time faculty members and opportunities for improvement and listed fifteen examples of topics for discussion.

On February 24, 2014, Parish reported that her last meeting with Allen-Noll also did not go well and lasted only 5 minutes because Allen-Noll told Parish that she was very busy and that it was an inconvenience for her to have to meet with Parish. Although Parish had one more meeting with Allen-Noll on March 10, 2014, Allen-Noll cancelled the remaining meetings scheduled that semester.

Allen-Noll became increasingly hostile toward Lausch, giving him one-word answers when he was trying to have a conversation with her. Because Lausch knew that Allen-Noll had not made progress on a number of items identified in the third PIP, he recommended non-renewal of her contract in March 2014.

### III. Allen-Noll's Contract is Not Renewed

The process for renewing teacher contracts—including those for technical college teachers—is outlined in Wis. Stat. §118.22, which provides in relevant part:

> At least 15 days prior to giving written notice of refusal to renew a teacher's contract for the ensuing school year, the employing board shall inform the teacher by preliminary notice in writing that the board is considering nonrenewal of the teacher's contract and that, if the teacher files a request therefor with the board within 5 days after receiving the preliminary notice, the teacher has the right to a private conference with the board prior to being given written notice of refusal to renew the teacher's contract.

In a preliminary notice dated March 24, 2014, Charles McDowell, Vice President of Human Resources, notified Allen-Noll that the board was considering not renewing her contract for the following reasons:

- Failure to successfully complete Performance Improvement Plan;
- Failure to attend staff meetings;

- Failure to communicate professionally and cordially with department staff and administrators;
- Failure or unwillingness to complete work assignments as directed;
- Failure or unwillingness to follow department and college procedures; and
- Poor judgment and unprofessional conduct.

Within five days of receiving the notice, Allen-Noll requested a private conference with the board. The conference took place on May 14, 2014, and both Lausch and Allen-Noll made presentations. Lausch presented the board with a seven-page executive summary and 72 pages chronicling Allen-Noll's performance issues. He also emphasized the extensive efforts, communications, and coaching given to Allen-Noll in an attempt to improve her performance. After meeting in a closed session, the board voted 6-2 in favor of non-renewal. Allen-Noll testified at her deposition that she is not aware of any board member having any racial bias against her.

## IV. Allen-Noll's Complaints of Harassment and Discrimination

MATC has a discrimination and harassment complaint process that includes both informal and formal complaints. The college instructs employees to discuss the matter first with their immediate supervisor. An informal complaint must be completed and signed by the complainant and delivered to Human Resources. The HR Investigator then serves as facilitator to resolve the matter without an investigation. It is an effort to reach a resolution that is mutually agreeable to the complainant and the respondent.

To file a formal complaint, the employee must complete and sign a complaint form and deliver it to Human Resources. The HR Investigator then notifies the accused, his/her

supervisor, and the Human Resources Director of the complaint within 10 days and must conduct a thorough investigation of the complaint within thirty 30 days of receipt.

### A. 2011 Informal Complaint

On May 11, 2011, Allen-Noll complained to Lausch about alleged discrimination and harassment and requested a formal investigation into the St. Mary's situation. Specifically, Allen-Noll accused faculty members Gorder, Polly, and Ahern of teaming up against her to garner student complaints and prompt Hauge to complain to Lausch; claimed that Gorder and Ahern treated her differently because of her skin color; and accused Ahern of sending security to her classroom to disrupt her class and remove a student.

Lausch worked closely with Miller to develop a process by which MATC would investigate the issues raised by Allen-Noll. Miller recommended that he and Lausch schedule a meeting with Allen-Noll to give her a chance to explain the facts and what she wanted them to investigate. On May 20, 2011, Lausch, Miller, and Malika Monger (Miller's director) met with Allen-Noll to discuss her informal discrimination and harassment complaint. Allen-Noll vocalized her belief that other faculty were treating her unfairly and inappropriately discussing their opinions of her with students and a tutor. She also complained about her class load and assignments. Lausch explained the St. Mary's situation to Allen-Noll, who stated that she was satisfied with the outcome and ready to move on to a new clinical site.

Following the meeting, Miller prepared a memorandum to recap the discussion. Lausch spoke with Ahern, Polly, and Gorder about Allen-Noll's complaints and specifically told Ahern not to discuss her opinion of Allen-Noll with students. He removed Gorder as Allen-Noll's

mentor at Allen-Noll's request. Lausch explained to Allen-Noll's new mentor (Parish) that "[h]er issue is that the P.N. staff simply do not like her. I cannot tell if it is race-related or simply personality conflicts." He also offered to be more involved in departmental meetings to ensure they were being carried out in a civil manner. Finally, Lausch instructed the faculty in charge of assigning classes to make sure Allen-Noll was assigned a fair load and felt supported in a way that helped her be successful.

### B. 2013 Internal and ERD Complaints

On or about December 20, 2013, Allen-Noll completed an electronic harassment and discrimination complaint form, which was dated-stamped as received by the college on January 6, 2014. Allen-Noll alleged that Lausch had singled her out for questioning regarding a student leaving the nursing program; that he gave her—but no other instructor—a specific directive to post her grades by a specific date and time; and that he removed her from a clinical site, all because of her race. Allen-Noll also alleged that Kliminski provided constant negative and false communications to her supervisor about her class because of her race.

Also on or about December 20, Allen-Noll filed a complaint with the State of Wisconsin Department of Workforce Development Equal Rights Division (ERD), which was stamped as received on December 26, 2013. In that complaint, Allen-Noll made many of the same allegations of discrimination that she had raised in her internal complaint and stated that the discrimination began on May 10, 2011 and most recently occurred on November 25, 2013. MATC promptly began investigating the internal complaint in January 2014, but it stayed the

investigation on January 21, 2014, pending the ERD's investigation of Allen-Noll's simultaneously-filed ERD complaint.

### C. 2014 ERD Complaint

Allen-Noll filed a second complaint with the ERD on July 14, 2014, alleging that MATC had further discriminated against her by deciding not to renew her contract on May 14, 2014. She also alleged that the nonrenewal of her contract was retaliation for her filing of her first ERD complaint.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." *Id*. "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017).

## II. Title VII, § 1981, and Equal Protection Claims

Allen-Noll's Title VII, § 1981, and equal protection claims all are subject to the same legal standard. Title VII prohibits employers from discriminating against their employees based on race, 42 U.S.C. § 2000e–2(a)(1), and prohibits retaliation or discrimination against an employee "because he has opposed any practice made an unlawful practice by this subchapter," 42 U.S.C. § 2000e–3(a). Section 1981 prohibits racial discrimination and retaliation against employees when a contractual relationship exists between the employer and employee. *Thompson v. Mem. Hosp. of Carbondale*, 625 F.3d 394, 402-03 (7th Cir. 2010); *Hobbs v. City of Chi.*, 573 F.3d 454, 460 (7th Cir. 2009). Although the statutes differ in the types of discrimination they proscribe, "the methods of proof and elements of the case are essentially identical." *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 671-72 (7th Cir. 2011) (quoting *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)). In addition, the Seventh Circuit has made clear that equal protection claims in employment discrimination cases such as this one are subject to the same analysis as Title VII claims; "the only difference is that a Title VII claim is against an employer, while an equal protection claim is against individual employees." *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007).

In her complaint and brief in response to defendants' motion for summary judgment, Allen-Noll alleges that beginning in 2011, her colleagues and supervisor (Lausch) criticized her teaching style and performance, took actions to get her removed from a clinical teaching position, and solicited negative comments from her students, all because she is African American. Allen-Noll also alleges that when she later complained about racial harassment, neither Lausch nor anyone else took any action to investigate the harassment or to stop it from occurring; instead, she was placed on a series of PIPs that eventually led to the non-renewal of her contract in 2014.

Allen-Noll may satisfy her burden with respect to her discrimination claims by introducing evidence that MATC treated her adversely because of her race. *Skiba v. Illinois Central Railroad Co.*, 884 F.3d 708, 719 (7th Cir. 2018); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("[C]ourts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards."). Alternatively, a plaintiff may proceed through the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*; *see also Harris v. Chi. Transit Auth.*, 2017 WL 4224616, at *4 (N.D. Ill. Sept. 22, 2017) ("[T]he burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), remains a valid—but nonexclusive—method of proving a Title VII claim.").

Under the burden-shifting approach, a plaintiff must come forward with evidence showing that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably."

*Skiba*, 884 F.3d at 719 (citing *Carson v. Lake County, Indiana*, 865 F.3d 526, 532-33 (7th Cir. 2017)). If Allen-Noll establishes a prima facie case, the burden shifts "to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Carson*, 865 F.3d at 533 (citation omitted).

In any event, "[h]owever the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action because of her [race]." *Skiba*, 884 F.3d at 720 (citing *Ortiz*, 834 F.3d at 765). "Th[e] legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [race] caused the discharge or other adverse employment action. Evidence must be considered as a whole." *Ortiz*, 834 F.3d at 765.

Allen-Noll's retaliation claim is subject to the same general standard announced in *Ortiz*: She must "produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) [defendants] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017); *see also Williams v. Office of Chief Judge of Cook Cty.*, 839 F.3d 617, 626 (7th Cir. 2016) (holding *Ortiz* applies to retaliation claims under Title VII).

To the extent that Allen-Noll also is alleging a hostile work environment claim,[1] she must show that: (1) she was subject to unwelcome harassment; (2) the harassment was based on race;

---

[1] Although Allen-Noll has consistently alleged that she was harassed by her supervisor and colleagues, she has not raised a legal argument to this effect in her brief in response to defendants' motion for summary judgment.

(3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability. *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018). The analysis does not focus on discrete acts of individual employees but the entire context of the workplace, including such factors as: "the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). Moreover, the alleged conduct must have a racial character or purpose. *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011).

Although defendants concede that Allen-Noll is a member of a protected class and that she engaged in the statutorily-protected activity of complaining about race discrimination, they contend that she was not meeting MATC's legitimate expectations for performance and has not identified any similarly-situated employees who were treated more favorably. More importantly, defendants argue that Allen-Noll cannot satisfy the causation element of her discrimination and retaliation claims because she has failed to present sufficient evidence from which a jury could reasonably conclude that her race or her complaints about race discrimination caused her discharge or other adverse employment action.

Apart from conclusory allegations and her own speculation about defendants' motives, Allen-Noll has not adduced any admissible evidence that her performance was called into question and that she was eventually terminated either because of her race or because her complaints of racial harassment and discrimination. The undisputed facts show that Lausch had several good reasons for monitoring Allen-Noll's performance, placing her on PIPs, and

recommending non-renewal of her employment contract.  Lausch received several complaints from students and other instructors, which he investigated and verified.  Although Allen-Noll insists that her colleagues targeted her because of her race, the undisputed evidence shows that other MATC instructors complained about what they considered to be inappropriate behavior toward students or patients.  Allen-Noll points out that she was the only African American instructor in her department, but there is no evidence that Lausch or any of her other colleagues were motivated by racial animus.  For example, Allen-Noll has never alleged that she was the target of any racial slurs, epithets, or other race-related behavior.

Allen-Noll points out in her response brief that she received several favorable comments from Lausch over the years.  However, those comments were made in the context of Lausch observing one day of Allen-Noll's classroom teaching each school year.  As Lausch himself explained to Allen-Noll, because his observations captured only one snapshot in time, they have little bearing on Allen-Noll's overall performance throughout the school year and do not put in dispute the numerous complaints that he received from Allen-Noll's colleagues and students on other occasions.

Even though Lausch received numerous complaints about Allen-Noll during the spring and fall semesters of 2011, he attempted to address the issues with Allen-Noll informally and did not place her on a PIP until the spring of 2012.  The undisputed evidence also shows that Lausch provided Allen-Noll with numerous opportunities and means to correct the problems identified in her three PIPs.  Although Allen-Noll asserts that she made necessary improvements, she has not presented any evidence to support that assertion or to dispute defendants' evidence to the contrary.  Allen-Noll also has failed to show that any of the reasons proffered by

24

defendants for her PIPs and eventual dismissal are not credible or had no basis in fact.[2]  In the absence of any evidence that Allen-Noll corrected the deficiencies or met the outcomes identified in her three sequential PIPs, a reasonable jury would conclude that there was a legitimate and nondiscriminatory basis for Lausch's recommendation of nonrenewal of her contract and the board's decision to accept that recommendation.

Allen-Noll says very little about why she believes that she was subject to retaliation.  She first complained about discrimination and harassment in May 2011, but the undisputed facts show that Lausch and MATC's human resources department took her complaint seriously and sought to address her concerns.  Allen-Noll suggests that the PIPs that she received in May and December 2012 were retaliatory acts, but she has presented no evidence to support that theory. By the time that Allen-Noll received her first PIP, over a year had passed since she filed her informal complaint.  Moreover, as explained above, the undisputed evidence shows that Lausch had only legitimate reasons to issue the PIPs.

Allen-Noll next complained about discrimination and harassment in December 2013, *after* receiving her third PIP.  Although Allen-Noll's contract was not renewed after she filed those complaints, she cannot rely on timing alone to prove a causal connection between her complaints of race discrimination and the non-renewal of her contract.  As defendants point out, it is well-settled that even "suspicious timing"—of which there is no evidence in this case—"rarely is sufficient to create a triable issue." *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) (quoting *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th

---

[2] In any event, it does not matter whether Lausch's interpretation of Allen-Noll's performance was exactly correct because "courts 'do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions.'" *Crotteau v. St. Coletta of Wis.*, 200 F. Supp. 3d 804, 814 (W.D. Wis. 2016) (quoting *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003)).

Cir. 2005)); *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) ("[I]t is clear that mere temporal proximity is not enough to establish a genuine issue of material fact" to survive summary judgment.).

In sum, Allen-Noll has failed to adduce any evidence from which a jury could infer that she was treated adversely because of her race or because she filed complaints of race discrimination and harassment. Therefore, defendants are entitled to summary judgment on her Title VII, § 1981, and equal protection claims.

## III. Procedural Due Process Claim

Allen-Noll alleges that Lausch and Stoner violated her rights under the due process clause by failing to ensure that she received a fair notice and hearing in advance of the MATC board's decision not to renew her employment contract. To succeed on a procedural due process claim, Allen-Noll must show: (1) a liberty or property interest protected by the constitution; (2) a deprivation of that liberty or property interest; and (3) a denial of due process. *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017). Allen-Noll's claim fails on the first element.

A public employee like Allen-Noll may have a property interest in her job if she has a "legitimate expectation of continued employment," which often is shown "through contractual language limiting the [employer]'s discretion to fire" him. *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 686 (7th Cir. 2014); *see also Grant*, 870 F.3d at 571 (noting public employee who can only be terminated for good cause has constitutionally protected property interest in continued employment); *Powers v. Richards*, 549 F.3d 505, 511 (7th Cir. 2008) (policy or

contract language prohibiting employee from being dismissed without just cause generally suffices to create property interest).

Defendants argue—and the undisputed facts demonstrate—that MATC did not have a tenure program, policy, or contractual agreement that limited its discretion to terminate Allen-Noll's employment. In addition, defendants point out that MATC's non-renewal process is governed by Wisconsin Statutes Chapter 118, which describes certain procedures to be followed in considering the nonrenewal of a contract but does not contain any limitations on the bases (such as just cause) on which a non-renewal decision can rest. *See Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 436 (7th Cir. 2004) (finding that the dismissal procedures in Wis. Stat. § 118.24 did not confer property interest in public school employee's continued employment); *see also Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972) (holding that college teacher had no due process property interest in continued employment with college because contract contained no explicit or implied tenure provision).

Allen-Noll asserts generally in her response brief that the board could only terminate non-probationary employees for cause and cites an August 25, 2016 email to and from a Lyrae Nadolski, who appears to have forwarded deadlines for "notification of non-renewal of administrative and full-time faculty contracts" that mentions "[p]er the Provost Office, non-probationary faculty who are candidates for non-renewal must be on a Performance Improvement Plan showing no improvement." Dkt. 57, exh. 20. However, Allen-Noll has not explained the context of this e-mail or properly proposed any findings of fact related to it or the non-renewal process. By not developing a meaningful argument in response to defendants' argument or presenting any evidence concerning the terms of her employment contract, Allen-

Noll has waived the issue and forfeited the argument. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming plaintiff's negligence claim abandoned because he failed to delineate it in brief in opposition to summary judgment); *Cent. States, Se. and Sw. Areas Pension Fund v. Midwest Motor Express*, 181 F.3d 799, 808 (7th Cir. 1999) ("A party's failure to meaningfully respond to a motion for summary judgment . . . constitutes waiver.").

In any event, even if Allen-Noll had properly introduced admissible evidence about the provost's requirement for a PIP showing non-improvement for non-renewal candidates, it would not save her due process claim. Not only it is undisputed that Lausch complied with the purported requirement, but the email discussed only the selection of candidates for non-renewal and says nothing about a tenure program, policy, or contractual agreement that limited the board's discretion to terminate full-time faculty.

Because a reasonable jury would not conclude from the undisputed facts that Allen-Noll had a property interest in her continued employment with MATC within the meaning of the due process clause, defendants are entitled to summary judgment with respect to Allen-Noll's procedural due process claim.

**ORDER**

IT IS ORDERED that the motion for summary judgment, dkt. 35, filed by defendants Madison Area Technical College, Board of Madison Area Technical College, Mark Lausch, and Carolyn Stoner is GRANTED.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 29th day of July, 2019.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge